TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
POONAM G. KUMAR (Cal. Bar No. 270802)
ROGER A. HSIEH (Cal. Bar No. 294195)
GREGORY D. BERNSTEIN (Cal. Bar No. 299204)
Assistant United States Attorneys
Major Fraud/General Crimes Sections
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0719/0600/3183
    Facsimile: (213) 894-6269
    E-mail:    poonam.kumar@usdoj.gov
               roger.hsieh@usdoj.gov
               gregory.bernstein@usdoj.gov


Attorneys for Plaintiff
UNITED STATES OF AMERICA

                  UNITED STATES DISTRICT COURT

               FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,              No. CR 19-282-RGK

            Plaintiff,                 GOVERNMENT'S TRIAL MEMORANDUM

                 v.                    Trial Date:  August 10, 2021
                                       Trial Time:  9:00 a.m.
ZHONGTIAN LIU,                         Location:    Courtroom of the
    aka "Liu Zhongtian,"                            Hon. R. Gary
    aka "Chairman,"                                 Klausner
    aka "Uncle Liu,"
    aka "UL,"
    aka "Big Boss,"
CHINA ZHONGWANG HOLDINGS
    LIMITED,
    aka "ZW,"
    aka "Mother Ship,"
ZHAOHUA CHEN,
    aka "Chen Zhaohua,"
    aka "Uncle Chen,"
XIANG CHUN SHAO,
    aka "Johnson Shao,"
PERFECTUS ALUMINIUM INC.,
    aka "Perfectus Aluminum
    Inc.,"
PERFECTUS ALUMINUM
    ACQUISITIONS, LLC,
SCUDERIA DEVELOPMENT, LLC,
1001 DOUBLEDAY, LLC,

1  VON KARMAN – MAIN STREET, LLC,
        and
2  10681 PRODUCTION AVENUE, LLC,

3            Defendants.

4

5       Plaintiff United States of America, by and through its counsel

6  of record, the Acting United States Attorney for the Central District

7  of California and Assistant United States Attorneys Roger A. Hsieh,

8  Poonam G. Kumar, and Gregory D. Bernstein, hereby files its Trial

9  Memorandum.

10  Dated: August 4, 2021          Respectfully submitted,

11                                 TRACY L. WILKISON
                                   Acting United States Attorney
12
                                   SCOTT M. GARRINGER
13                                 Assistant United States Attorney
                                   Chief, Criminal Division
14

15  _____/s/_____

16                                 ROGER A. HSIEH
                                   POONAM G. KUMAR
17                                 GREGORY D. BERNSTEIN
                                   Assistant United States Attorneys
18
                                   Attorneys for Plaintiff
19                                 UNITED STATES OF AMERICA

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

TABLE OF AUTHORITIES..................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.    INTRODUCTION....................................................1

II.   STATUS OF THE CASE.............................................1

III.  STATEMENT OF THE CHARGES.......................................4

IV.   STATEMENT OF FACTS.............................................5

V.    PROCEDURAL HISTORY.............................................8

VI.   ELEMENTS OF THE CHARGES........................................9

VII.  EVIDENTIARY ISSUES.............................................9

      A.    Authentication and Foundation...........................9

      B.    Emails and Other Documents Used in the Regular Course
            of Business are Admissible Under a Hearsay Exception
            or as Non-Hearsay Under Rules 803(6), 801(d)(2)(E),
            and 801(d)(2)(C)-(D)...................................10

            1.    The Evidence is Admissible as Business Records
                  Under Rule 803(6)................................12

            2.    Independently, the Evidence is Admissible as Co-
                  Conspirator Statements Under 801(d)(2)(E)........13

            3.    Independently, the Evidence is Admissible as
                  Party Opponent Statements Under Rule 801(d)(2)(C)
                  and (D)..........................................15

      C.    Summary Charts........................................16

      D.    Summary Witness.......................................17

VIII.       LEGAL ISSUES...........................................18

      A.    Defendants' Request for a Jury Instruction without
            Basis in Fact or Law..................................18

      B.    Defendants' Equitable Estoppel Defense................18

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                PAGE

**FEDERAL CASES**

Barsky v. United States,
      339 F.2d 180(9th Cir. 1964)...................................16

Bourjaily v. United States,
      483 U.S. 171 (1987)......................................13, 14

Diamond Shamrock Corp. v. Lumbermens Mutual Casualty Co.,
      466 F.2d 722(7th Cir. 1972)...............................18

Tamarin v. Adam Caterers, Inc.,
      13 F.3d 51(2d Cir. 1993)..................................17

United States v. Black,
      767 F.2d 1334(9th Cir.1985)................................9

United States v. Caswell,
      825 F.2d 1228(8th Cir. 1989)..............................17

United States v. Chu Kong Yin,
      935 F.2d 990(9th Cir. 1991)................................9

United States v. Crespo de Llano,
      838 F.2d 1006 (9th Cir. 1988)..............................14

United States v. Gardner,
      611 F.2d 770(9th Cir. 1980)............................16, 17

United States v. Lemire,
      720 F.2d 1327(D.C. Cir.1983)..............................17

United States v. Loya,
      807 F.2d 1483 (9th Cir. 1987)..............................14

United States v. Meyers,
      847 F.2d 1408(9th Cir. 1988)..............................16

United States v. Poschwatta,
      829 F.2d 1477(9th Cir. 1987)..............................16

United States v. Radseck,
      718 F.2d 233(7th Cir. 1983)...............................16

United States v. Schmit,
      881 F.2d 608 (9th Cir. 1989)..............................14

United States v. Shirley,
      884 F.2d 1130(9th Cir.1989)...............................17

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                PAGE

United States v. Silverman,
          449 F.2d 1341(2d Cir. 1971)....................................16

United States v. Soulard,
          730 F.2d 1292(9th Cir. 1984)...................................18

United States v. Yarbrough,
          852 F.2d 1522 (9th Cir. 1988)..................................14

**STATUTES**

18 U.S.C. § 1343.........................................................6, 16

18 U.S.C. § 545......................................................6, 16, 17, 18

**RULES**

Fed. R. Crim. P. 7.......................................................10, 17

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On May 7, 2019, a grand jury returned a 53-page indictment.  The same day the indictment was returned, the government filed a complex case notice and estimated that its case-in-chief would require 15 trial days.  (Dkt. 20.)  The indictment charges defendants with a wide-ranging conspiracy to defraud the United States and with a conspiracy to commit: (1) wire fraud regarding defendants' scheme to fraudulently inflate the value of defendant China Zhongwang Holdings' ("CZW") stock, by among other things, falsely inflating CZW's sales revenue, volume of exports to the U.S., and overall financial position; (2) customs fraud regarding defendants' evasion of $1.8 billion in anti-dumping and countervailing duties (AD/CVD) owed to U.S. Customs Border & Protection ("CBP") and the U.S. Treasury when defendants imported 2.2 million aluminum extrusions in the shape of pallets into the U.S.; and (3) international promotional money laundering regarding defendants' movement of hundreds of millions of dollars through accounts in the U.S. to promote the investor fraud and evasion of AD/CVD duties.  (Dkt. 1.)  The indictment also charges substantive violations of wire fraud, customs fraud, and international promotional money launder and includes two forfeiture allegations.  (Id.)

### II.   STATUS OF THE CASE

1.    Jury trial is set for August 10, 2021, against the six Perfectus and Warehouse defendants.[1]  The remaining four defendants –

---

[1] The U.S.-based defendant companies scheduled for trial are Perfectus Aluminium, Inc. ("Perfectus"), Perfectus Aluminum Acquisitions LLC ("Perfectus Acquisitions", collectively with

*(footnote cont'd on next page)*

- Zhongtian Liu, CZW, Zhaohua Chen, and Xiang Chun "Johnson" Shao -- have failed to make an initial appearance in this case.  On August 4, 2021, six days before trial, the Perfectus and Warehouse defendants filed an ex parte application to continue the trial date by nearly four months.  (Dkt. 223.)  The government opposed the motion.  (Dkt. 225.)  The government endeavors to present its case-in-chief within the original estimate of 15 trial days, but this time could vary based various factors, including whether defendants stipulate to certain undisputed facts, whether the government is required to call multiple custodians of record as witnesses to authenticate business records for which the government has already provided Rule 902(11) certifications, and the Court's rulings on motions in limine.

2.   The government anticipates calling approximately 40-50 witnesses in its case-in-chief.  This includes current and former employees of companies that defendants controlled, expert witnesses, current and former law enforcement personnel, and other witnesses with information relevant to the case.  On August 2, 2021, the government provided defense counsel with a preliminary witness list. The government understands that the Perfectus and Warehouse defendants intend to call defense witnesses, including three expert witnesses, economist Brian Becker, retired professor Marshall White, and Professor Denis Simon.[2]

---

Perfectus the "Perfectus defendants"), Scuderia Development LLC ("Scuderia"), 1001 Doubleday LLC ("Doubleday"), Von Karman-Main Street LLC ("Main Street"), and 10681 Production Avenue LLC ("Production Avenue", collectively with Scuderia, Doubleday, and Main Street, the "Warehouse defendants").

[2] The government received defendants' expert notice of Brian Becker on July 19, 2021.  On July 27, 2021, the government requested discovery from defense regarding Brian Becker, including the bases and reasons for his opinion under Rule 16(b)(1)(C) and the bases for

*(footnote cont'd on next page)*

2

3.   The government will call custodians of records as witnesses if certain self-authenticating exhibits are not admitted pursuant to Rule 902(11).  (See Dkt. 217, Government's Motion in Limine to Admit Self-Authenticating Business Records.)  On August 2, 2021, the government provided defense counsel with a preliminary exhibit list for their convenience and in order to determine whether defendants would be willing to stipulate to the admission of certain evidence.

4.   The parties filed various pre-trial motions, including:

a.   7/11/21: Government's Motion in Limine No. 1 to Preclude Argument Related to Harm AD/CVD Orders Were Intended to Address (Dkt. 192);

b.   7/12/21: Government's Motion in Limine No. 2 to Exclude Arguments that Pallets Fell Outside the Scope of the 2011 AD/CVD Orders and Request for a Jury Instruction Consistent with Binding Authority (Dkt. 194);

c.   7/12/21: Government's Motion in Limine No. 3 to Admit Pre-Trial Self-Authenticating Foreign Records (Dkt. 195);

d.   7/13/21: Government's Motion in Limine No. 4 to Admit Pre-Trial Certified Copies of Defendants' Statements (Dkt. 196);

e.   7/19/21: Defendants' Cross-Motion in Limine to Exclude Evidence Regarding Scope Ruling (Dkt. 209);

f.   7/29/21: Government's Motion in Limine to Admit Pre-Trial Self-Authenticating Business Records (Dkt. 217);

---

the methodology for his analysis under Rule 16 so that the government can determine whether his testimony is proper under Rules 702 and 703.  To date, the government has not received the requested discovery from defendants.  The government reserves its rights to move to exclude portions of Brian Becker's testimony.  The government received defendants' expert notice of Professor Denis Simon on August 1, 2021.  The government continues to evaluate this disclosure and reserves its right as to Professor Simon's testimony.

g.   7/30/21: Defendants' Motion in Limine No. 1 to Exclude Hearsay, Irrelevant, and Unduly Prejudicial Materials (Dkt. 218); and

h.   7/30/21: Defendants' Motion in Limine No. 2 to Exclude Government's Proffered Rule 404(b) Evidence (Dkt. 219).

i.   8/2/21: Government's Request for Judicial Notice of Average Annual Currency Conversion Rates and China Zhongwang's Daily Stock Price (Dkt. 221).

5.   Trial by jury has not been waived.

**III. STATEMENT OF THE CHARGES**

Count One alleges defendants violated 18 U.S.C. § 371, in two ways, by conspiring: (1) to defraud the U.S., specifically CBP; and (2) to commit offenses against the U.S., namely, wire fraud, in violation of 18 U.S.C. § 1343; passing false and fraudulent papers through a customshouse, in violation of 18 U.S.C. § 545; and international promotional money laundering, in violation of 18 U.S.C. § 1956(a)(2)(A).

Counts Two through Ten allege defendants committed a wire fraud scheme to defraud investors in defendant CZW's stock in violation of 18 U.S.C. § 1343 and aided and abetted each other in violation of 18 U.S.C. § 2(a).

Counts Eleven through Seventeen allege defendants committed customs fraud by evading payment of $1.8 billion in AD/CVD duties owed to CBP and the U.S. Treasury through the submission of false Forms 7501 to CBP in violation of 18 U.S.C. § 545 and aided and abetted each other in violation of 18 U.S.C. § 2(a).

Counts Eighteen through Twenty-Four allege the Perfectus defendants committed international promotional money launder by moving hundreds of millions of dollars through accounts in the U.S.

4

1  to promote the investor fraud and evasion of AD/CVD duties in

2  violation of 18 U.S.C. § 1956(a)(2)(A) and aided and abetted each

3  other in violation of 18 U.S.C. § 2.

4       The Perfectus defendants are charged in all Twenty-Four Counts.

5  The Warehouse defendants are charged in all counts except for the

6  international promotional laundering counts charged in Counts

7  Eighteen through Twenty-Four.

8  **IV.  STATEMENT OF FACTS**

9       Defendants, including the Perfectus and Warehouse defendants,

10  executed a wide-ranging and complex conspiracy to defraud investors

11  in a publicly-listed company, evade over $1.8 billion in AD/CVD

12  duties owed to the U.S. Treasury and CBP, and move hundreds of

13  millions of dollars through accounts in the U.S. to promote the

14  investor fraud and evasion of AD/CVD duties.

15       Defendant Zhongtian Liu ("defendant Liu"), who was the Chairman

16  of defendant CZW, an aluminum extrusion company publicly listed on

17  the Hong Kong Stock Exchange, was the mastermind of the scheme.  In

18  May 2009, defendant CZW became publicly listed on the Hong Kong Stock

19  Exchange following one of that year's largest Initial Public

20  Offerings.  (Id. ¶¶ 5, 34 (Overt Act ("OA") 11).)  As a result of the

21  IPO, defendant CZW raised $1.26 billion.  (Id. ¶ 5.)  The scheme to

22  fraudulently inflate the value of defendant CZW began before

23  defendant CZW was publicly-listed when, in advance of the IPO,

24  defendants Liu, CZW, and Chen caused $200 million to be wired to a

25  bank account in the U.S. controlled by a co-conspirator in 2008.

26  (Id. ¶¶ 33(a)(i)(I), 33(c), 34 (OAs 1, 3-6, 10).)  At defendant Liu's

27  direction, these funds were then wired back to defendant CZW as a

28  purported "loan" from Scuderia.  (Id.)  In defendant CZW's IPO

prospectus, defendants Liu and CZW misrepresented this transaction as a real loan from an independent third party, failing to disclose that the "loan" originated with defendant Liu and that defendants Liu and CZW did not intend to repay it.

After the completion of the IPO, defendants Liu and CZW began reporting tremendous growth of defendant CZW's aluminum sales to the U.S.  For instance, through annual reports, defendants Liu and CZW told investors that defendant CZW's revenue from the U.S. accounted for 40.8% and 29.1% of the company's overall revenue in 2009 and 2010, respectively, up from only 1.8% in 2008.  (Id. ¶ 34 (OAs 14, 23).)  Defendants Liu and CZW represented that this revenue was derived from true arms-length transactions when, in fact, defendants Liu and CZW had directed entities under their control, including the Perfectus defendants[3] in CDCA, to "purchase" the aluminum and had provided the funds to purchase the aluminum.  (Id. ¶¶ 11, 33(a)(i)(II)-(III), 33(d)-(g).)  To create the appearance that defendant CZW's aluminum sales to the U.S. were legitimate transactions, defendant Liu used the Warehouse defendants to purchase warehouses in CDCA to stockpile the aluminum.  (Id. ¶¶ 19-22, 33(a)(i)(III), 33(j), 33(x), 34 (OAs 7, 9, 12, and 78).)

When in 2011, the Department of Commerce ("DOC") imposed AD/CVD duties of approximately 400% on imports of aluminum extrusions from certain Chinese aluminum manufacturers, including defendant CZW, defendants had to find another way to "sell" aluminum to the

---

[3] Prior to the creation of Perfectus, there were seven "Perfectus predecessor entities" in CDCA that imported aluminum from defendant CZW.  (Ind. ¶¶ 11-12.)  These "Perfectus predecessor entities" merged into the Perfectus defendants in late 2014.  (Id. ¶¶ 16-18.)  Herein, the Perfectus defendants refers to the defendant-entities as well as the Perfectus predecessor entities.

Perfectus defendants without having to pay the AD/CVD duties.  (<u>Id.</u>
¶¶ 26-28.)  So, they agreed to smuggle extrusions into the U.S. by
disguising the extrusions as pallets.  (<u>Id.</u> ¶¶ 33(a)(ii)-(iii),
33(x)-(cc), 34.)  Defendants then conspired to lie to CBP and
describe these "pallets" upon importation as finished products, when,
in fact, defendants knew they were not finished products, there was
no market or customers for the "pallets," and defendants intended to
melt the pallets at facilities owned by defendants Liu and CZW in New
Jersey and California.  (<u>Id.</u> ¶¶ 33(aa)-(cc), 34 (OAs 35, 36).)

To further the wire and customs fraud schemes, defendants Liu
and CZW caused defendant CZW's annual reports to falsely claim there
was an increasing demand for the pallets in the U.S., when, in fact,
there were no customers.  (<u>Id.</u> ¶ 33(h).)  Lacking legitimate buyers,
defendants Liu and CZW directed the Perfectus defendants to purchase
the pallets, which were ultimately stored at the warehouses owned by
the Warehouse defendants as well as at defendant Liu's New Jersey
facility.  (<u>Id.</u> ¶¶ 33(a)(i)(III), 33(j), 33(r)(ii), 33(s).)  To keep
the wire scheme going, the aluminum was concealed in over 2 million
square feet of warehouse space in Southern California owned by the
Warehouse defendants as well as at defendant Liu's New Jersey
facility.  (<u>Id.</u> ¶¶ 33(a)(i)(III), 33(j), 33(r)(ii), 33(s).)

Since the Perfectus defendants were not selling the pallets to
customers, they did not have the funds to pay for the pallets.  So,
defendants Liu, CZW, and Chen used Hong Kong shell companies to wire
hundreds of millions of dollars into bank accounts held by the
Perfectus defendants in CDCA, which then returned the money to
defendant CZW in the form of payments for the aluminum.  (<u>Id.</u>
¶¶ 33(a)(iii), 33(k)-(p), 34 (OAs 54, 56, and 58-87, among others).)

## V.   PROCEDURAL HISTORY

On July 31, 2019, the government unsealed the 24-count indictment, and the government subsequently served summonses for an August 26, 2019, initial appearance date on defendants.  (See Dkt. 52 at 5-6.)  Prior to this initial appearance date, counsel for the Perfectus defendants acknowledged the summons date, but notified the government that he "was not authorized to enter an appearance or attend the initial appearance."  (Id.)  Thereafter, the Perfectus and Warehouse defendants disregarded the summonses issued by the Court while actively litigating related civil forfeiture matters before the Honorable Dolly M. Gee.[4]

As a result, this Court found the Perfectus and Warehouse defendants in contempt and issued a total judgment of approximately $5.8 million against them.  (Dkts. 59, 64, 74-80, 151-52.)  In April 2021, after Judge Gee granted the government's request to strike defendants' civil forfeiture claims based on their refusal to appear in the criminal case, the Perfectus and Warehouse defendants appeared nearly eight months after their court-ordered initial appearance date.  (Dkts. 127-32, 149 at 2-3.)  To date, defendant CZW has failed to appear and sanctions continue to accrue against it.  (Dkt. 177.)  Defendants Liu, Chen, and Shao also have not appeared.

---

[4]   In 2017, the government brought civil forfeiture complaints against the aluminum products and warehouses used to store aluminum products that are at issue in this case (the "Civil Forfeiture Matters").  The defendants moved to dismiss the complaints.  (See 17-CV-1592-DMG, Dkt. 14; 17-CV-1872-DMG, Dkt. 14; 17-CV-1873-DMG, Dkt. 14; 17-CV-1875-DMG, Dkt. 13.)  Last year, the four non-Perfectus entities retained Stephen Larson and Hilary Potashner to represent them in the Civil Forfeiture Matters.  (See 17-CV-1592-DMG, Dkts. 46, 48; 17-CV-1872-DMG, Dkts. 54, 55; 17-CV-1873-DMG, Dkts. 46, 47; 17-CV-1875-DMG, Dkts. 45-46.)

1    On June 14, 2021, the Perfectus and Warehouse defendants filed a

2  motion to dismiss the indictment (Dkt. 186).  The Court denied

3  defendants' motion (Dkt. 212).

4  **VI.  ELEMENTS OF THE CHARGES**

5    The parties have been meeting and conferring on proposed jury

6  instructions and plan to file joint jury instructions, disputed jury

7  instructions, and memoranda of law in support of disputed jury

8  instructions on August 5, 2021.

9  **VII. EVIDENTIARY ISSUES**

10    **A.   Authentication and Foundation**

11    Federal Rule of Evidence 901(a) provides that "[t]he requirement

12  of authentication or identification as a condition precedent to

13  admissibility is satisfied by evidence sufficient to support a

14  finding that the matter in question is what its proponent claims."

15  Under Rule 901(a), evidence should be admitted, despite any

16  challenge, once the government makes a prima facie showing of

17  authenticity or identification so "that a reasonable juror could find

18  in favor of authenticity or identification . . . [because] the

19  probative force of the evidence offered is, ultimately, an issue for

20  the jury."  United States v. Chu Kong Yin, 935 F.2d 990, 996 (9th

21  Cir. 1991) (citations and internal quotation marks omitted); see also

22  United States v. Black, 767 F.2d 1334, 1342 (9th Cir. 1985).

23    The government need not establish all links in the chain of

24  custody of an item or call all persons who were in a position to come

25  into contact with it.  See Gallego v. United States, 276 F.2d 914,

26  917 (9th Cir. 1960).  Alleged gaps in the chain of custody go to the

27  weight of the evidence rather than to its admissibility.  See United

28  States v. Taylor, 716 F.2d 701, 711 (9th Cir. 1983); see also United

States v. Harrington, 923 F.3d 1371 (9th Cir. 1991).  A duplicate is admissible to the same extent as the original, unless there is a genuine question as to the authenticity of the original or it would be unfair under the circumstances to admit the duplicate in lieu of the original.  See Fed. R. Evid. 1003; United States v. Smith, 893 F.2d 1573, 1579 (9th Cir. 1990).

Federal Rule of Evidence 902 provides that certain evidence is self-authenticating, including the original or a copy of a domestic business record "as shown by a certification of the custodian or another qualified person[.]"  Fed. R. Evid. 902(11).

**B.   Emails and Other Documents Used in the Regular Course of Business are Admissible Under a Hearsay Exception or as Non-Hearsay Under Rules 803(6), 801(d)(2)(E), and 801(d)(2)(C)-(D)**

The government plans to introduce into evidence emails and other documents used to facilitate the fraudulent scheme to defraud investors of CZW, the government out of $1.8 billion in AD/CVD duties, and the movement of hundreds of millions of dollars through the U.S. financial system.

By way of example, the government highlights some of the categories of documents it intends to admit into evidence and that are reflected on the exhibit list already provided to defendants. These include emails regarding regular business activity, wire transfer records and confirmations, and weekly operation reports.

To further the fraudulent scheme, CZW representatives would instruct defendant Johnson Shao to place specific orders for pallets from CZW via email to make the orders appear legitimate.  See Exhibit 1.  In Exhibit 1, Yajuan Zhao identified herself as a CZW

10

representative and emailed defendant Shao and instructed him to place specific orders for aluminum pallets directly with CZW. <u>Id.</u> These "orders" were fake because there was no demand for the pallets and CZW provided Perfectus money to pay for the pallets and this incoming money was categorized by Perfectus as "loans." To cover up that the orders were fake, Zhao emailed defendant Shao from her personal email address, provided him the exact words to use when placing the order, instructed him to contact "Harriet Lau in Hong Kong," and cautioned him to "write another email, don't cc us in the email to Hong Kong or forward this email." <u>Id.</u> The same day, and as instructed by Zhao, defendant Shao composed a new email to harrietlau@zhongwang.com placing an "order" for aluminum pallets using the same language provided by Zhao. <u>Exhibit 2</u>.

In other emails, a representative of CZW would email defendant Shao with the number and value of pallets that would be arriving at Perfectus from various vendors. <u>Exhibit 3</u>. Shao would then direct a Perfectus employee to create the purchase orders to match the pallets that were already arriving to make it seem as though Perfectus was ordering the pallets. <u>Exhibit 4</u>.

Once CZW provided Perfectus money to pay for the pallets, Perfectus would wire the money back to CZW within days through shell companies. These wire transactions facilitated the fraudulent scheme as charged in the indictment were carried out in the normal course of business. <u>See</u> <u>Exhibit 5</u>. Perfectus' weekly operations reports reflected the fraudulent amount of "loans" that defendants received from defendant CZW and the ever-growing amount of inventory of aluminum that Perfectus did not sell. <u>See</u> <u>Exhibit 6</u>.

1    These emails and other related business records are admissible
2 at trial under a hearsay exception or as non-hearsay under three
3 independent bases: (1) as business records under Rule 803(6); (2) as
4 co-conspirator statements under Rule 801(d)(2)(E); and (3) as
5 statements of a party-opponent or agent under Rules 801(d)(2)(C) and
6 (D).

7    1.   The Evidence is Admissible as Business Records Under
8         Rule 803(6)

9    Many of the documents the government seeks to admit are
10 admissible as business records.  Rule 803(6) allows for the admission
11 of business records when they are: (1) made or based on information
12 transmitted by a person with knowledge at or near the time of the
13 transaction; (2) made in the ordinary course of business; and (3)
14 trustworthy, with neither the source of information nor method or
15 circumstances of preparation indicating a lack of trustworthiness.
16 United States v. Catabran, 836 F.2d 453, 457 (9th Cir. 1988); see
17 also Clark v. City of Los Angeles, 650 F.2d 1033, 1036–37 (9th Cir.
18 1981).

19    Although emails do not automatically qualify as business
20 records, courts routinely admit emails that meet the requirements of
21 Rule 803(6) into evidence.  See, e.g., United States v. Lischewski, -
22 -- Fed. Appx. ----, 2021 WL 2826474, at *3 (9th Cir. July 7, 2021)
23 (no abuse of discretion in admitting email as business record under
24 Rule 803(6), court has "wide discretion" to determine whether
25 evidence meet's Rule 803's "trustworthiness standard"); Ionian Corp.
26 v. Country Mut. Ins. Co., No. 3:10-cv-0199-ST, 2011 WL 6070442, at
27 *2, *18 (D. Or. Dec. 2, 2011) (admitting emails as business records);
28 Volterra Semiconductor Corp. v. Primarion, Inc., 2011 WL 4079223, at

*7 (N.D.Cal. Sept. 12, 2011) ("[Plaintiff] laid a foundation at trial establishing that the email was admissible under the business record exception to the hearsay rule.").

Documents discussing the placement for orders of pallets between CZW and defendant Shao and related purchase orders, the transfer of funds into and out of bank accounts, and documents reflecting wire transfers and the weekly operations of Perfectus are admissible under Rule 803(6) because they were made at or near the time of the event, by persons with knowledge of the event, during the course and scope of a regular business activity (placing orders for aluminum products), via a means of a communication (email) that the government will establish was regularly used during the ordering process. Nothing in these emails indicate a lack of trustworthiness, either regarding the source of information or the method or circumstances of preparation.

### 2. Independently, the Evidence is Admissible as Co-Conspirator Statements Under 801(d)(2)(E)

Many of the exhibits are also independently admissible as co-conspirator statements under Rule 801(d)(2)(E). Statements by one conspirator during the course of and in furtherance of the conspiracy may be used against another conspirator because such statements are not hearsay. Fed. R. Evid. 801(d)(2)(E). Rule 801(d)(2)(E) requires a foundation that: (1) the statement was made during the life of the conspiracy; (2) it was made in furtherance of the conspiracy; and (3) there is, including the coconspirator's statement itself, sufficient proof of the existence of the conspiracy and of the defendant's connection to it. Bourjaily v. United States, 483 U.S. 171, 173, 181 (1987).

1  The government need only show by a preponderance of the evidence

2  that a statement is a co-conspirator statement in order for the

3  statement to be admissible under Rule 801(d)(2)(E).  <u>Bourjaily</u>, 483

4  U.S. at 176; <u>United States v. Crespo de Llano</u>, 838 F.2d 1006, 1017

5  (9th Cir. 1988).  "Once a conspiracy is shown, the [government] need

6  only present slight evidence connecting the defendant to the

7  conspiracy."  <u>Crespo de Llano</u>, 838 F.2d at 1017.  The trial court can

8  allow the government to introduce co-conspirator statements before

9  establishing the conspiracy and the defendant's connection to it.

10  <u>United States v. Loya</u>, 807 F.2d 1483, 1490 (9th Cir. 1987).

11  To be admissible under Fed. R. Evid. 801(d)(2)(E) as a statement

12  made by a co-conspirator in furtherance of the conspiracy, a

13  statement "must further the common objectives of the conspiracy or

14  set in motion transactions that are an integral part of the

15  conspiracy."  <u>United States v. Yarbrough</u>, 852 F.2d 1522, 1535 (9th

16  Cir. 1988).  The courts have interpreted the "in furtherance of"

17  requirement broadly.  <u>See</u> <u>id.</u> at 1535-36.  Statements made with the

18  intent of furthering the conspiracy are admissible whether or not

19  they actually result in any benefit to the conspiracy.  Thus, co-

20  conspirator statements need not be made to a member of the conspiracy

21  to be admissible under Rule 801(d)(2)(E).  <u>United States v. Schmit</u>,

22  881 F.2d 608, 612 (9th Cir. 1989).

23  Here, (1) defendant Shao communicated with representatives

24  during the course of the conspiracy via email to coordinate the

25  "purchase" of pallets by companies controlled by defendant Liu from

26  defendant CZW; (2) Perfectus returned money to CZW through wire

27  transfers; and (3) Perfectus documented the amount of "loans" it

28  received from CZW and its inventory in weekly operation reports.

1    These communications furthered the common objectives of the

2    conspiracy as alleged in the indictment to defraud investors and

3    evade AD/CVD duties.  Thus, these communications are independently

4    admissible as co-conspirator statements under Rule 801(d)(2)(E).

5              3.    Independentaly, the Evidence is Admissible as Party

6                    Opponent Statements Under Rule 801(d)(2)(C) and (D)

7         Finally, the emails between defendant Shao and representatives,

8    wire transfer records, and weekly operation reports of CZW are

9    independently admissible under Rule 801(d)(2)(C) and (D) as party-

10   opponent admissions.  As the government noted in prior briefing, the

11   definition of a party opponent does not require the person making the

12   statement be the "owner."  To the contrary, the rules require only

13   that it be "made by a person whom the party authorized to make a

14   statement on the subject" or "was made by the party's agent or

15   employee on a matter within the scope of that relationship and while

16   it existed."  Fed. R. Evid. 801(d)(2)(C) and (D).  Those requirements

17   are satisfied here.  Defendant Shao was authorized to place order for

18   aluminum from CZW as CEO of Perfectus and the Perfectus Predecessor

19   Entities.  In turn CZW could fulfill those orders and provide

20   direction on how defendant Shao should place those orders.  Thus, the

21   emails are admissible.  See, e.g., Metro-Goldwyn-Mayer Studios, Inc.

22   v. Grokster, Ltd., 454 F. Supp. 2d 966, 973-74 (C.D. Cal. 2006)

23   (admitting emails between corporate officers and employees as well as

24   emails from an independent contractor of defendant under Rule

25   801(d)(2)(D)).  Further, defendant Shao was authorized to send wires

26   from Perfectus to CZW, and employees at Perfectus were authorized to

27   create weekly operation reports and those documents are admissible

28   under Rule 801(d)(2)(C) and (D).

1

    C.   **Summary Charts**

2       A chart or summary may be admitted as evidence where the

3  underlying documents are voluminous, admissible, and available for

4  inspection.  See United States v. Meyers, 847 F.2d 1408, 1411-12 (9th

5  Cir. 1988).  While the underlying documents must be admissible, they

6  need not be admitted.  See Id. at 1412.  Summary charts need not

7  contain the defendant's version of the evidence and may be given to

8  the jury while a government witness testifies concerning them.  See

9  United States v. Radseck, 718 F.2d 233, 239 (7th Cir. 1983); Barsky

10 v. United States, 339 F.2d 180, 181 (9th Cir. 1964).

11      Summary exhibits, such as those the government wishes to

12 introduce into evidence, have long been recognized as an appropriate

13 means of clarifying a complicated or document-intensive case for the

14 jury.  See United States v. Silverman, 449 F.2d 1341, 1346 (2d Cir.

15 1971).  Federal Rule of Evidence 611(a) permits a court to "exercise

16 reasonable control over the mode and order of interrogating witnesses

17 and presenting evidence so as to (1) make the interrogation and

18 presentation effective for ascertainment of the truth, (2) avoid

19 needless consumption of time, and (3) protect witnesses from

20 harassment or undue embarrassment."  United States v. Poschwatta, 829

21 F.2d 1477, 1481 (9th Cir. 1987); United States v. Gardner, 611 F.2d

22 770, 776 (9th Cir. 1980).

23      Under Federal Rules of Evidence 1006 and 611(a), courts

24 routinely admit into evidence summary charts that organize other

25 evidence and aid the jury's understanding, as long as the underlying

26 evidence is admissible, has been made available to the adverse party,

27 and a witness with knowledge of the preparation of the chart or

28 summary is available for cross-examination.  See United States v.

16

1  *Gardner*, 611 F.2d 770, 776 (9th Cir. 1980); *Tamarin v. Adam Caterers*,

2  *Inc.*, 13 F.3d 51, 53 (2d Cir. 1993); *United States v. Caswell*, 825

3  F.2d 1228, 1235-36 (8th Cir. 1989).

4      This case involves a large number of documents, in particular,

5  financial records, customs records, tax records, other business

6  records.  To assist in the jury's understanding of the case, the

7  government intends to present charts and summaries of those

8  materials.  The summary exhibits the government intends to present

9  satisfy all of the foregoing requirements.  The pertinent evidence is

10 admissible.  The summarized evidence has been provided to the

11 defense.  The summary witnesses will be available for cross-

12 examination.  Moreover, the summary exhibits will serve to organize

13 and clarify the government's presentation and assist the jury's

14 understanding of the case.  The use and admission of summary exhibits

15 at trial is thus appropriate.  Fed. R. Evid. 611(a); *Gardner*, 611

16 F.2d at 776.

17     **D.   Summary Witness**

18     A summary witness may properly testify about, and use a chart to

19 summarize, evidence that has already been admitted.  The court and

20 jury are entitled to have a witness "organize and evaluate evidence

21 which is factually complex and fragmentally revealed."  *United States*

22 *v. Shirley*, 884 F.2d 1130, 1133-34 (9th Cir. 1989) (agent's testimony

23 regarding her review of various telephone records, rental receipts,

24 and other previously offered testimony held to be proper summary

25 evidence, as it helped jury organize and evaluate evidence; summary

26 charts properly admitted); *United States v. Lemire*, 720 F.2d 1327,

27 1348 (D.C. Cir. 1983).

28

1   A summary witness may rely on the analysis of others where the
2   summary witness has sufficient experience to judge another person's
3   work and incorporate as his or her own the fact of its expertise.
4   The use of other persons in the preparation of summary evidence goes
5   to its weight, not its admissibility.  See United States v. Soulard,
6   730 F.2d 1292, 1299 (9th Cir. 1984); Diamond Shamrock Corp. v.
7   Lumbermens Mutual Casualty Co., 466 F.2d 722, 727 (7th Cir. 1972)
8   ("It is not necessary . . . that every person who assisted in the
9   preparation of the original records or the summaries be brought to
10  the witness stand.").

11  **VIII.  LEGAL ISSUES**

12      **A.    Defendants' Request for a Jury Instruction without Basis in**
13             **Fact or Law**

14      As noted above, the parties plan to file joint jury
15  instructions, disputed jury instructions, and memoranda of law in
16  support of disputed jury instructions.  Defendants propose a jury
17  instruction regarding purported "untimely disclosure of exculpatory
18  or impeachment evidence."  This proposed instruction has no basis in
19  fact (see, e,g, Government's Opposition to Defendants' Ex Parte
20  Application to Continue Trial) or law as the government will explain
21  in its memorandum of law in support of disputed jury instructions.
22  On August 4, 2021, the government inquired whether defendants intend
23  to mention such a purported failure in their opening statement.  At
24  the timing of this filing, defendants have not responded to the
25  government's inquiry.

26      **B.    Defendants' Equitable Estoppel Defense**

27      On July 21, 2021, the Perfectus and Warehouse defendants
28  provided notice to the government of its intent to raise an

18

entrapment by estoppel defense "in an abundance of caution" under Federal Rule of Criminal Procedure 12.3 (Dkt. 211).  On July 30, 2021, the government objected to defendants' notice as deficient because it failed to identify the "agency member on whose behalf the defendant claims to have acted" as required under Rule 12.3(a)(2)(B) and the notice was untimely under Rule 12.3(a)(3) which requires a government response "no later than 21 days before trial" which was impossible with an August 10, 2021, trial date.  See also United States v. Theunick, 651 F.3d 578, (6th Cir. 2011) (Rule 12.3 notice for entrapment by estoppel defense deficient because defendant "failed to specify in the notice the official he claims to have relied upon"); United States v. Jackson, 1998 WL 149586, at *3-4 (N.D. Ill. Mar. 24, 1998) (distinguishing between public authority and entrapment by estoppel defenses, noting that Rule 12.3 applies to entrapment by estoppel).

Even if defendants notice was sufficient and timely, the government anticipates that defendants will not be able to meet the elements of this defense at trial because it requires the following: that (1) an "authorized government official" who was empowered to render the claimed erroneous advice; (2) "who has been made aware of all the relevant historical facts," (3) affirmatively told defendants the proscribed conduct was permissible; (4) defendants relied on the false information; and (5) defendants' reliance was reasonable. United States v. Batterjee, 3651 F.3d 1210 (9th Cir. 2004) (citations and certain quotations omitted).  The government reserves all of its rights as to this defense.