TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ROGER A. HSIEH (Cal. Bar No. 294195)
GREGORY D. BERNSTEIN (Cal. Bar No. 299204)
Assistant United States Attorneys
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0600/3183
    Facsimile: (213) 894-6269
    E-mail:   roger.hsieh@usdoj.gov
              gregory.bernstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-282-RGK |
|---|---|
| Plaintiff, | <u>GOVERNMENT'S SENTENCING POSITION AND OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT; DECLARATION OF AUSA ROGER A. HSIEH; EXHIBITS</u> |
| v. | |
| ZHONGTIAN LIU, <br>   aka "Liu Zhongtian," <br>   aka "Chairman," <br>   aka "Uncle Liu," <br>   aka "UL," <br>   aka "Big Boss," <br>CHINA ZHONGWANG HOLDINGS <br>   LIMITED, <br>   aka "ZW," <br>   aka "Mother Ship," <br>ZHAOHUA CHEN, <br>   aka "Chen Zhaohua," <br>   aka "Uncle Chen," <br>XIANG CHUN SHAO, <br>   aka "Johnson Shao," <br>PERFECTUS ALUMINIUM INC., <br>   aka "Perfectus Aluminum Inc.," <br>PERFECTUS ALUMINUM <br>   ACQUISITIONS, LLC, <br>SCUDERIA DEVELOPMENT, LLC, <br>1001 DOUBLEDAY, LLC, <br>VON KARMAN – MAIN STREET, LLC, <br>   and | |

10681 PRODUCTION AVENUE, LLC,

      Defendants.

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Roger A. Hsieh and Gregory D. Bernstein, hereby files its Sentencing Position and Objections to the Presentence Investigation Report ("PSR").

This Position and Objections are based upon the attached memorandum of points and authorities, the declaration of AUSA Roger A. Hsieh, the trial transcripts filed with the Court, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 28, 2022      Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

       /s/
ROGER A. HSIEH
GREGORY D. BERNSTEIN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                          PAGE

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.   INTRODUCTION.....................................................1

II.  PROCEDURAL HISTORY...............................................2

III. STATEMENT OF FACTS...............................................3

IV.  THE COURT SHOULD ORDER $1.96 BILLION IN RESTITUTION..............5

V.   THE PERFECTUS DEFENDANTS HAVE $1.5 BILLION MORE IN ASSETS
     THAN THEY HAVE REPORTED..........................................8

     A.   The Perfectus Defendants Have $1.5 Billion in
          Inventory...................................................9

     B.   The Perfectus Defendants' Liabilities Should Be
          Disregarded.................................................9

VI.  CONCLUSION......................................................12

**TABLE OF AUTHORITIES**

**Federal Cases**                                                    Page(s)

United States v. Anderson,
    741 F.3d 938 (9th Cir. 2013) .................................... 6

United States v. Baker,
    584 Fed. Appx. 469 (9th Cir. 2014) .............................. 6

**Federal Statutes**

18 U.S.C. § 3663A ................................................. 6

18 U.S.C. § 3664 ............................................... 6, 7

**United States Sentencing Guidelines**

USSG § 8C1.1 ...................................................... 8

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In a wide-ranging and audacious conspiracy, Perfectus Aluminium, Inc. ("Perfectus"), Perfectus Aluminum Acquisitions, LLC ("Perfectus Acquisitions", together with Perfectus the "Perfectus defendants"), Scuderia Development LLC ("Scuderia"), 1001 Doubleday LLC ("Doubleday"), Von Karman-Main Street LLC ("Main Street"), and 10681 Production Avenue LLC ("Production Avenue", together with Scuderia, Doubleday, and Main Street, the "Warehouse defendants"), defrauded investors in China Zhongwang Holdings, Limited ("CZW"), a company publicly traded on the Hong Kong Stock Exchange, and fraudulently evaded duties owed to the United States government. To execute this conspiracy, the co-conspirators lied repeatedly and with impunity to investors, government agencies, and courts, destroyed evidence, tampered with witnesses who may have told the truth, moved billions of dollars throughout the globe to ensure the conspiracy's success, and caused losses of nearly $2 billion.

The Perfectus and Warehouse defendants were integral participants in this conspiracy; indeed, they existed only to perpetrate it. The Perfectus defendants, acting at the direction of Zhongtian Liu ("Liu"), pretended to be genuine purchasers of CZW aluminum products when, in fact, they were purchasing the products at the direction of Liu and CZW and using funds from CZW to "pay" for the goods. When the United States government imposed anti-dumping and countervailing duties ("AD/CVD duties") on CZW's aluminum extrusions in 2011 through AD/CVD orders, the Perfectus defendants began importing aluminum extrusions welded into the form of pallets ("aluminum pallets") and, between 2011 and 2014, imported

2.2 million aluminum pallets to criminally evade the AD/CVD duties. The Warehouse defendants, acting at the direction of Liu, purchased four warehouses where the Perfectus defendants concealed vast quantities of aluminum they imported.

For the reasons set forth below, the government respectfully requests that this Court order that each defendant pay $1.96 billion in restitution and require upfront and immediate monetary payments in the amounts set forth below.

**II.  PROCEDURAL HISTORY**

On July 31, 2019, the government unsealed a 24-count indictment, charging a conspiracy to commit wire fraud, evade the payment of $1.8 billion in AD/CVD duties, and commit international promotional money laundering.  The government served summonses for an August 26, 2019, initial appearance date on Perfectus and Warehouse defendants.  (See Dkt. 52 at 5-6.)  Prior to this initial appearance date, counsel for the Perfectus defendants acknowledged the summons date, but notified the government that he "was not authorized to enter an appearance or attend the initial appearance."  (Id.)  Thereafter, the Perfectus and Warehouse defendants disregarded the summonses issued by the Court while actively litigating related civil forfeiture matters before the Honorable Dolly M. Gee.

As a result, this Court found the Perfectus and Warehouse defendants in contempt and issued a total judgment of approximately $5.8 million against them.  (Dkts. 59, 64, 74-80, 151-52.)  In April 2021, after Judge Gee granted the government's request to strike defendants' civil forfeiture claims based on their refusal to appear in the criminal case, the Perfectus and Warehouse defendants finally

2

appeared nearly eight months after their court-ordered initial appearance date. (Dkts. 127-32, 149 at 2-3.)

On June 14, 2021, the Perfectus and Warehouse defendants filed a motion to dismiss the indictment. (Dkt. 186.) The Court denied defendants' motion. (Dkt. 212.) In August 2021, the Perfectus and Warehouse defendants proceeded to a nine-day trial, and the jury found defendants guilty on all counts. (Dkt. 273.) The Court denied defendants' motion for a new trial and motion for acquittal. (Dkt. 320.)

### III. STATEMENT OF FACTS

As Chairman and majority shareholder of CZW, the largest aluminum extrusion company in Asia, (PSR ¶ 24[1]), Liu did everything he could to make CZW appear more profitable than it was. It began with the preparation for the company's IPO in 2008. (PSR ¶ 26.) To make it appear as though CZW had attracted substantial foreign investment, Liu and Chen caused $200 million to be wired to an entity called Scuderia Capital Partners ("SCP") in the US, which was led by Eric Shen ("Shen"), the CEO of all four Warehouse defendants until 2013. (PSR ¶¶ 38, 44.) Days after receiving the $200 million, SCP returned that money to CZW in the form of a bogus loan that CZW never fully repaid. (PSR ¶ 44.) Then, in CZW's prospectus, Liu and CZW misrepresented this loan as real and omitted that the money SCP lent CZW originated with Liu and that Liu controlled the lender. (PSR ¶ 44.)

After CZW's stock began trading in May 2009, CZW began fraudulently selling an enormous number of aluminum extrusions and,

---

[1] All references to the PSR in the Statement of Facts are to the Perfectus Aluminum PSR.

3

after the 2011 AD/CVD orders, aluminum pallets, to the Perfectus defendants, entities that Liu controlled.[2] (PSR ¶ 45.) Following Liu's orders, CZW directed the Perfectus defendants and specifically their nominee CEO, Johnson Shao ("Shao"), to "purchase" aluminum from CZW and sent Perfectus the funds it needed to "pay" for this aluminum through Hong Kong shell companies. (PSR ¶ 45.)

The resulting growth of aluminum "sales" to the US that CZW falsely reported to investors was remarkable. (PSR ¶ 46.) In its annual reports, CZW told investors that aluminum extrusion sales in the US accounted for a large portion of the company's overall revenue in 2009 and 2010, up from a smaller percentage in 2008. (PSR ¶ 46.) Liu and CZW falsely reported that this revenue was the result of true arms-length transactions. (PSR ¶ 46.)

In 2011, defendants' fraudulent plan to drive up CZW's revenue numbers through bogus sales to Perfectus hit an obstacle. That year, the US Department of Commerce imposed AD/CVD duties of up to 400% on CZW's aluminum extrusions. (PSR ¶ 47.) So, the defendants looked for a way to criminally evade the AD/CVD duties and began to falsely rely on the "finished merchandise" exception, which exempted from the AD/CVD orders finished products that in part contained aluminum extrusions, like glass windows. (PSR ¶ 47.) Specifically, CZW began tack-welding its extrusions into aluminum pallets and smuggled the extrusions to Perfectus, which then submitted false Forms 7501 to CBP

---

[2] In December 2014, Peng Cheng Aluminum, Century American Aluminum Inc., Global Aluminum Inc., American Apex Aluminum Inc., Aluminum Source Inc., Transport Aluminum Inc., and Aluminum Industrial Inc. merged into Perfectus. (PSR ¶ 29.) At that time, Perfectus inherited the liabilities of these merging companies. (PSR ¶ 33.) Unless otherwise stated, the government refers to the foregoing companies as "the Perfectus defendants" or "Perfectus".

4

in which the aluminum pallets were falsely declared as not subject to the AD/CVD duties. (PSR ¶ 47.) In actuality, defendants knew that the pallets were not finished products, that there was no market/customers for the pallets, and that they intended to melt the pallets down. (PSR ¶ 47.)

Between 2011 and 2014, Perfectus imported 2.2 million aluminum pallets from CZW. (PSR ¶ 48.) In that same period, Liu and CZW falsely reported on the importance of the company's pallet sales, highlighting that CZW's pallet exports "grew significantly" and that the company had "intensified efforts in developing overseas markets" that led to an "increasing demand for these products in the US." (PSR ¶ 49.) Without sales of its own and with no ability to sell CZW's aluminum, Perfectus needed money to keep the fraud schemes going, so CZW, Liu, and others laundered hundreds of millions of dollars through Hong Kong shell companies to Perfectus. (PSR ¶ 50.)

When allegations about CZW's fraud schemes began to surface in the summer of 2015, Liu ordered the aluminum pallets in the warehouses and Aluminum Shapes, another factory Liu controlled in New Jersey, to be exported to a company in Vietnam called Global Vietnam Aluminum, yet another factory that Liu owned and hid from investors. (PSR ¶ 51.) In January 2017, the government formally seized the remaining aluminum pallets that totaled 279,808. (PSR ¶¶ 52, 86.)

**IV. THE COURT SHOULD ORDER $1.96 BILLION IN RESTITUTION**

Since the defendants at issue are corporate entities, the ultimate question is the appropriate monetary sanction for their egregious conduct. In this case, the actual losses totaled nearly $2 billion. As such, the government requests that the Court issue a restitution order as to each defendant in the full amount.

Restitution is mandatory pursuant to the Mandatory Victims Recovery Act ("MVRA"). 18 U.S.C. § 3663A. The goal of the MVRA "is to make the victim[s] whole." United States v. Anderson, 741 F.3d 938, 951 (9th Cir. 2013). This Court need only reasonably estimate a restitution amount, it need not be calculated with precision. United States v. Baker, 584 Fed. Appx. 469, 471 (9th Cir. 2014) ("'Speculation and rough justice are not permitted' when calculating restitution under the MVRA, but 'exact precision is not required and district courts have a degree of flexibility in accounting for the victim's complete losses; thus, a reasonable estimate will suffice.'") (quoting Anderson, 741 F.3d at 954). Further, the restitution amount need only be supported by a preponderance of the evidence. 18 U.S.C. § 3664(e). In a case involving multiple participants, such as here, the Court may order each defendant liable for the full amount of restitution. 18 U.S.C. § 3664(h).

Here, the actual losses are $1,960,514,745.[3] (PSR ¶¶ 54-56.) Accordingly, the government respectfully requests that the Court order that each of the Perfectus and Warehouse defendants pay restitution in the amount of $1,960,514,745 with $124,270,000 due to the individual victims and amounts listed on the PSR and $1,836,244,745 due to CBP. As shown at trial and noted in the PSR, the Warehouse defendants maintain significant assets, namely four warehouses within this district. Each Warehouse defendant should be ordered make a payment within 90 days in the amounts set forth in the

---

[3] The Presentence Investigation Reports ("PSRs") released by the United States Probation Office set forth the itemized list of victims and the amounts each is owed. The government requests the Court incorporate this list into the Judgment and Commitment Order in this case.

6

PSR, namely, $36,521,176.74 for 1001 Doubleday, $56,239,560.35 for 10681 Production Avenue, $44,934,998.30 for Scuderia Development, and $23,518,695.52 for Von Karman Main Street.  (PSR ¶ 81 (1001 Doubleday), PSR ¶ 80 (10681 Production Avenue), PSR ¶ 81 (Scuderia), PSR ¶ 80 (Von Karman).)  The amount of immediate payment for the Warehouse defendants is dependent on the value of the warehouse owned by that particular defendant.  The PSR used the tax assessed value in choosing the immediate payment figure.  The government understands, however, that the warehouses are worth much more than the tax assessed value, upwards of $800-$900 million collectively.  The Court should also order that any proceeds from the sale of the warehouses in excess of the tax assessed values be applied to the restitution order.  See 18 U.S.C. § 3664 (f)(2)(A) (the Court shall specify the manner in which restitution is to be paid in consideration of "the financial resources and other assets of the defendant").  As set forth in greater detail below, the government also submits that the Perfectus defendants have the financial ability to pay $1.5 billion towards restitution.  Thus, in considering defendants' assets and financial condition, the government requests that the Court order for each defendant that restitution is due and payable immediately.[4]

Since the Warehouse and Perfectus defendants operated primarily for a criminal purpose and primarily by criminal means (PSR ¶ 94 (Perfectus Acquisitions); PSR ¶ 93 (Perfectus); PSR ¶ 86 (1001 Doubleday); PSR ¶ 85 (10681 Production Avenue); PSR ¶ 86 (Scuderia Development); PSR ¶ 85 (Von Karman Main Street)), the Sentencing

---

[4] By including the language that restitution is due and payable immediately, any proceeds in excess of the immediate payment figure would automatically be applied to restitution unless and until the full restitution amount is satisfied.

Guidelines require that the Court set the fine "at an amount (subject to the statutory maximum) sufficient to divest the organization of all its net assets." USSG § 8C1.1. In the event the Court does not order full restitution of $1.96 billion as to each defendant, the government requests that, consistent with the Sentencing Guidelines, the Court impose a fine sufficient to divest each defendant of all assets. Here, the statutory maximum fine is twice the gross loss caused by the co-conspirators, which in this case is $3.92 billion.

**V.   THE PERFECTUS DEFENDANTS HAVE $1.5 BILLION MORE IN ASSETS THAN THEY HAVE REPORTED**

The Court's determination about the financial condition of the Perfectus defendants is an integral step in the sentencing phase. In particular, it determines what immediate payment the defendants can make towards restitution. The PSR correctly determined that the Perfectus defendants owe restitution in the total amount of $1,960,514,745. (PSR ¶ 109 (Perfectus PSR); PSR ¶ 110 (Perfectus Acquisitions PSR).) Based on a representation by the Perfectus defendants, the PSR determined that the Perfectus defendants' sole asset was the 279,808 pallets currently in the possession of the government. (PSR ¶ 87 (Perfectus PSR); PSR ¶ 88 (Perfectus Acquisitions PSR).) Thus, the PSR concluded that the pallets should be liquidated and the value of them paid towards restitution. However, the pallets are subject to criminal forfeiture and, thus, will not be available for restitution at this time. Further, the government respectfully disagrees and objects to the PSR's conclusion that the sole asset of the Perfectus defendants are these remaining pallets. Specifically, the government submits that the Perfectus defendants have $1.5 billion more in assets than they have declared.

### A. The Perfectus Defendants Have $1.5 Billion in Inventory

As set forth in the PSR, as of 2015, the Perfectus defendants reported having in excess of $1.5 billion in inventory, namely, the aluminum it had fraudulently imported from China. (PSR ¶ 83 (Perfectus), PSR ¶ 84 (Perfectus Acquisitions); Ex. 401 to Declaration of Roger A. Hsieh ("Hsieh Decl.") (showing over $1.5 billion in aluminum inventory).) As the evidence showed at trial, after allegations of wrongdoing began to surface and in order to conceal their scheme, the Perfectus defendants began exporting their aluminum inventory in July 2015 and again in 2016. (E.g., Vol. 1, 8/10/2021 Trial Tr. at 198; Vol. 6, 8/17/2021 Trial Tr. at 204-05; Vol. 7, 8/18/2021 Trial Tr. at 204-09, 220-22.) The pallets currently in the government's possession are what remain of the 2.2 million pallets the Perfectus defendants imported during the course of the conspiracy. (PSR ¶ 48 (Perfectus Acquisitions and Perfectus).) Whether the Perfectus defendants sold the aluminum (and, thus, are sitting on the proceeds of that sale) or simply transferred it out of the country, the value of those assets – which the Perfectus defendants themselves valued at $1.5 billion (Ex. 401 to Hsieh Decl.) — are assets of the Perfectus defendants and thus, must be considered when assessing their financial condition.

### B. The Perfectus Defendants' Liabilities Should Be Disregarded

To the extent the Perfectus defendants contend that their liabilities outweigh any such assets, the Court should reject this argument and disregard the liabilities as fraudulent.

In 2015, the Perfectus defendants claimed to have over $1.7 billion in liabilities. (PSR ¶ 84 (Perfectus PSR); PSR ¶ 85 (Perfectus Acquisitions PSR).) These liabilities are split in two

categories: approximately $1.28 billion in "loans" and $497 million in accounts payable. (Id.) As the evidence at trial proved, the "loans" accounted for on the Perfectus defendants' books were incoming funds from CZW for the purpose of paying for the aluminum pallets that the Perfectus defendants were buying from CZW. Shao, the CEO of the Perfectus defendants, told Mark Li ("Li"), the then-accounting manager and later the CEO, to classify all incoming wires from Hong Kong as loans. (Vol. 3, 8/12/2021 Trial Tr. At 30-32.) Li testified that as of July 2015, there were $1.28 billion in incoming wires from Hong Kong that were classified as loans. (Id. at 82-83; Ex. 401 to Hsieh Decl.) Li testified that he never saw any loan documents supporting these loans and never saw any payments being made on these loans. (Id. at 30-32.) Further, the Perfectus defendants accrued no loan interest expenses on these loans. (See Ex. 406 to Hsieh Decl.) In short, the Perfectus defendants did not treat them as real loans. Further, the testimony at trial showed that CZW (the seller of the aluminum pallets) was funding the purchase of its own aluminum by transferring huge sums of money through Hong Kong shell companies to the Perfectus defendants. (E.g., Exs. 10, 12, 328, 340, 349A, 371, and 384 (Dkt. 305); Vol. 7, 8/18/2021 Trial Tr. at 69-130; see also Dkt. 320, Court Order denying Rule 29 motion, at 7 ("Regarding the Perfectus defendants, the Government produced evidence that CZW directed their CEO, Johnson Shao, to purchase aluminum from CZW and sent the Perfectus defendants the money to fund the phony purchases.") Indeed, these incoming wire transfers were the basis for the money laundering convictions of the Perfectus defendants. The evidence is clear that the Perfectus defendants never treated these wire transfers as loans that they

intended to repay, because they were not.  Rather, these funds were designed to keep maintain a criminal conspiracy.[5]  As such, these purported loans should be disregarded when assessing the Perfectus defendants' ability to pay.[6]

The $497 million in accounts payable should similarly be disregarded.  As set forth above and as established at trial, the Perfectus defendants received products from CZW and paid CZW for those products with money CZW provided to the Perfectus defendants.  Indeed, CZW was the only source of goods for the Perfectus defendants.  (Vol. 2, 8/11/2021 Trial Tr. at 83, 240-41; Vol. 3, 8/12/2021 Trial Tr. at 120-22.)  Since the Perfectus defendants did not have aluminum suppliers other than CZW, then it is fair to conclude that all or nearly all of this accounts payable figure was owed to CZW.  Indeed, an internal operations report for the Perfectus defendants from July 2015 shows that approximately 99.8% of the accounts payable balance was "Payable to China."  (Ex. 401 to Hsieh Decl.)  Since CZW was a co-conspirator and was funding the Perfectus defendants in order to keep the scheme going, it is clear that the accounts payable balance was fictitious in much the way the loan balance was.  Because the loan balance and accounts payable balance

---

[5] As the evidence showed at trial, Liu, the mastermind of this scheme, used a fraudulent loan on another occasion to further the scheme, specifically a bogus $200 million loan in advance of CZW's IPO from Scuderia Capital Partners and co-conspirator Eric Shen. (PSR ¶¶ 38, 44.)  In the case of this loan and other similar actions with Shen, Liu also regularly used Hong Kong shell companies to transfer money to Shen, including to purchase the four warehouses. (Exs. 28-30, 37 (Dkt. 305); Vol. 4, 8/13/2021 Trial Tr. at 98-102, 130-44.)

[6] Indeed, these funds should have been accounted for on the books of the Perfectus defendants as income.  Recording them as loans was designed to further and conceal the ongoing conspiracy.

11

were fraudulent, the $1.7 billion in liabilities claimed by the Perfectus defendants should be disregarded.

Accordingly, there are no liabilities to offset the $1.5 billion in assets belonging to the Perfectus defendants. As such, the government respectfully requests that the Court order the Perfectus defendants make an immediate payment of $1.5 billion towards restitution.

## VI. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence the defendants as follows:

- Perfectus Aluminium, Inc., Perfectus Aluminum Acquisitions, LLC, Scuderia Development LLC, 1001 Doubleday LLC, Von Karman-Main Street LLC, and 10681 Production Avenue LLC are ordered to pay $1,960,514,745 in restitution with $124,270,000 due to the individual victims in the amounts listed on the PSR and $1,836,244,745 due to CBP;
- Restitution is due in full and payable immediately;
- 1001 Doubleday, LLC is ordered to make a payment of at least $36,521,176.74 within 90 days of sentencing;
- 10681 Production Avenue, LLC is ordered to make a payment of at least $56,239,560.35 within 90 days of sentencing;
- Scuderia Development, LLC is ordered to make a payment of at least $44,934,998.30 within 90 days of sentencing;
- Von Karman Main Street, LLC is ordered to make a payment of at least $23,518,695.52 within 90 days of sentencing; and
- Perfectus Aluminum Acquisitions LLC is ordered to make a payment of at least $1,500,000,000 within 90 days of sentencing.

12

- After this immediate payment, all defendants shall make monthly payments of 10% of their gross revenue, but no less than $100.
- Restitution shall first be paid to the investors in China Zhongwang Holdings, Limited, and then to Customs and Border Protection.

<u>DECLARATION OF ROGER A. HSIEH</u>

I, Roger A. Hsieh, declare as follows:

1. I am an Assistant United States Attorney in the United States Attorney's Office for the Central District of California. I represent the government in <u>United States v. Zhongtian Liu</u>, et al., CR 19-282-RGK.

2. Attached hereto are what I understand to be true and correct copies of Exhibits 401 and 406 -- with certain personal identifying information redacted -- from the August 2021 trial in <u>United States v. Zhongtian Liu</u>, et al., CR 19-282-RGK.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on February 28, 2022.

*/s/ Roger Hsieh*
ROGER A. HSIEH