ROBERT F. RUYAK *(Pro Hac Vice)*
*robertr@ruyakcherian.com*
**RUYAKCHERIAN LLP**
1901 L Street NW, Suite 700
Washington, DC 20036
Telephone: 202-838-1560

Attorneys for Defendants
PERFECTUS ALUMINIUM INC.,
aka "Perfectus Aluminum Inc.," and
PERFECTUS ALUMINUM ACQUISITIONS LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

ZHONGTIAN LIU,
aka "Liu Zhongtian,"
aka "Chairman,"
aka "Uncle Liu,"
aka "UL,"
aka "Big Boss,"
CHINA ZHONGWANG HOLDINGS LIMITED,
aka "ZW,"
aka "Mother Ship,"
ZHAOHUA CHEN,
aka "Chen Zhaohua,"
aka "Uncle Chen,"
XIANG CHUN SHAO,
aka "Johnson Shao,"
PERFECTUS ALUMINIUM, INC.,
aka Perfectus Aluminum Inc.,"
PERFECTUS ALUMINUM ACQUISITIONS, LLC,
SCUDERIA DEVELOPMENT, LLC,
1001 DOUBLEDAY, LLC,
VON KARMAN - MAIN STREET, LLC, and
10681 PRODUCTION AVENUE, LLC,

Defendants.

Case No. 19-cr-00282 RGK

Judge: R. Gary Klausner

**PERFECTUS DEFENDANTS' RESPONSE TO THE GOVERNMENT'S SENTENCING POSITION AND OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT**

**(CORRECTED VERSION)**

Sentencing Date: April 11, 2022
Time: 1:30 p.m.

Defendants Perfectus Aluminum, Inc. ("PAI"), and Perfectus Aluminum Acquisitions, LLC ("PAA") (collectively, the "Perfectus Defendants"), through their attorneys of record, RuyakCherian, LLP, hereby submit their response to the government's position regarding sentencing and objections to the Presentence Reports.

Dated March 14, 2022 RUYAKCHERIAN, LLP

By:______________________

Robert F. Ruyak (*Pro Hac Vice*)

Attorneys for Defendants PERFECTUS ALUMINUM, INC and PERFECTUS ALUMINUM ACQUISITIONS, LLC

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1

II. PROCEDURAL HISTORY ........ 2

III. THE PERFECTUS DEFENDANTS' RESPONSE TO THE GOVERNMENT'S SENTENCING POSITION AND OBJECTIONS TO THE PRESENTENCE REPORTS ........ 3

A. The Government Erroneously Contends That This Case Represents Actual Losses of Nearly $2 Billion That are Subject To Restitution Under the MVRA. ........ 3

B. The Government Contends, Without Any Factual Basis, That the Perfectus Defendants Have the Financial Ability to Pay $1.5 Billion. ........ 7

C. The Government's Contention That a Fine OF $1.96 Billion Is Applicable under the Statutes Is Wrong. ........ 9

IV. CONCLUSION ........ 12

i

PERFECTUS DEFENDANTS' RESPONSE TO THE GOVERNMENT'S SENTENCING POSITION AND OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bofl Holding, Inc. Security Litigation*, 977 F.3d 781 (9th Cir. 2020) ........ 5, 9

*Langbord v. United States Department of Treasury*, 832 F.3d 170 (3rd Cir. 2016) ........ 11

*Perfectus Aluminum, Inc. v. United States*, 391 F. Supp. 3d 1341 (Ct. Int'l Trade 2019, *aff'd*, 836 Fed. Appx. 883 (Fed. Cir. 2020)) ........ 4

*United States v. Bajakjian*, 524 U.S. 321 (1998) ........ 12

*United States v. Catoggio*, 326 F.3d 323 (2nd Cir. 2003) ........ 5

**Statutes**

18 U.S.C. § 371 ........ 2, 10
18 U.S.C. § 545 ........ 2, 3, 10
18 U.S.C. § 892 ........ 11
18 U.S.C. § 981 (a) (1) (c) ........ 11
18 U.S.C. § 1343 ........ 2, 10
18 U.S.C. § 1956 (a) (2) ........ 2, 11
18 U.S.C. § 3571 ........ 10

**Other Authorities**

F.R.Crim.P. 32.2 ........ 11, 12

Mandatory Victim Restitution Act ........ 1, 3, 4, 5

U.S.S.G. § 8C1.1 ........ 9, 10, 12

## I. INTRODUCTION

Defendants Perfectus Aluminum, Inc ("PAI") and Perfectus Aluminum Acquisitions, LLC ("PAA"), (collectively, the "Perfectus Defendants" or "Defendants") reply and object to the Government's Sentencing Position and Objections to the Presentence Investigation Report, filed with this court on February 28, 2022. (Dkt.348)

First, The Government erroneously contends that the MVRA applies in this case to warrant the imposition of restitution, which it does not. The Perfectus Defendants objections to the application of the MVRA in this case is set forth more fully, with controlling authorities, in Perfectus Defendants' Sentencing Memorandum: Objections To Presentence Report; and Sentencing Summary Chart, filed with this Court on February 28, 2022. (Dkt.346) In sum, neither the conspiracy conviction under Count One nor the underlying charged offenses of Passing False Papers through a Customs House, under Counts Eleven through Seventeen, and Wire Fraud, under Counts Two through Ten, provide a statutory basis for the application of the MVRA. The CBP is not a "victim," nor has it incurred "losses" as defined by the MVRA statute. (Dkt.346 at 6-11) Nor are the entities listed in the Presentence Report (Dkt.333 at 25) "individual victims," as the Government contends. None of them has ever held beneficial ownership of CZW stock and, thus, has never experienced either gains or losses related to changes in the value of CZW stock, which the Government contends is the basis for MVRA restitution. (Dkt.346 at 12-15)

Second, the Government argues, yet provides no evidence, that the Perfectus Defendants have the financial ability to pay $1.5 billion. The Government objects to the findings of the Presentence Report that the total remaining assets of the Perfectus Defendant corporate entities is limited to the value of the aluminum pallets owned by PAI and now in the custody of the Government. (Dkt.348 at 8)

Despite a government investigation and prosecution that spanned more than five years, and seizing all of the corporate records of the Perfectus Defendants, the Government can only provide theories, not evidence, arguing that "it is fair to conclude" that the Perfectus Defendants should have other assets. Yet the evidence is clear that these entities ceased operations in 2015, and that they own no facilities, equipment, inventory (other than the seized pallets), investments, sources of revenue or cash accounts.

Third, the government argues that the Perfectus Defendants should be fined in the amount of $1.96 billion. But there is no statutory basis for such a fine. Even if a fine were applicable, it would be limited by both the net asset value of the Perfectus Defendants and the combined statutory maximum for the convicted offenses.

## II. PROCEDURAL HISTORY

On August 23, 2021, the jury convicted the Perfectus Defendants on Counts One through Twenty-four of the Indictment. (Dkt.276) Count One of the Indictment charged the Defendants with Conspiracy under 18 U.S.C. § 371. (Dkt. 1) Counts Two through Ten charged them with wire fraud under 18 U.S.C. § 1343. Counts Eleven through the Seventeen charged the Defendants with passing false and fraudulent papers through customhouse under 18 U.S.C. § 545. Counts Eighteen through Twenty-four charged the Defendants with international promotional money laundering under 18 U.S.C. § 1956 (a)(2(A).

On January 24, 2022, Probation submitted the Presentence Reports for the Perfectus Defendants. (Dkt.333; Dkt.334) On February 28, 2022, the Perfectus Defendants filed detailed Joint Objections to the Presentence Reports. (Dkt.346; Dkt.347) Those submissions by the Perfectus Defendants demonstrated that there is no legal authority to order the Perfectus Defendants to pay restitution in this case. Also on February 28, 2022, the government filed a submission setting forth

its sentencing positions and objections to the Presentence Reports. (Dkt.348) Sentencing is currently set for April 11, 2022, at 1:30 p.m. (Dkt.340)

## III. THE PERFECTUS DEFENDANTS' RESPONSE TO THE GOVERNMENT'S SENTENCING POSITION AND OBJECTIONS TO THE PRESENTENCE REPORTS

### A. The Government Erroneously Contends That This Case Represents Actual Losses of Nearly $2 Billion That are Subject To Restitution Under the MVRA.

The Government's position must be rejected since it runs afoul of the statutory framework of the Mandatory Victim Restitution Act ("MVRA"). A conspiracy conviction is, on its own, insufficient to justify a restitution award under the MVRA (Dkt.346 at 4-6), and Courts must, instead, look to the underlying substantive convictions. But the underlying convictions here, customs fraud and wire fraud, do not support restitution under the facts of this case as alleged and proven.

The customs fraud counts—Counts Eleven through Seventeen—do not support the imposition of restitution based on the unpaid AD/CVD duties on the aluminum pallets the Perfectus Defendants imported. (Dkt.346 at 6-11) As a matter of law, the CBP is not entitled to any restitution because the Perfectus Defendants' Section 545 convictions are not offenses against any property interest. The CBP does not have a "property right" in the claimed AD/CVD duties. The Department of Commerce's decision to impose an import barrier—AD/CVD duties on aluminum extrusions imported from the People's Republic of China — creates no such property right. The imposition of AD/CVD duties is purely regulatory. (Dkt.346 at 9) Nor are there any other "victims" under the MVRA. Since the government takes the position that Perfectus "never sold a single CZW pallet" in the U.S. (Dkt.333 at 12, ¶ 48.), it must concede that there is no evidence of harm to

the U.S. domestic aluminum industry or any other victim as a result of these importations.

In addition, restitution for the claimed duties cannot be ordered as a matter of law. Here, the Court of International Trade ("CIT") has already ruled on this very issue, finding that it could "provide no further relief" for CBP to recover any additional AD/CV duties on these same aluminum pallets because those entries had been conclusively liquidated. *See Perfectus Aluminum, Inc. v. United States*, 391 F. Supp. 3d 1341, 1357–58 (Ct. Int'l Trade 2019, *aff'd*, 836 Fed. Appx. 883 (Fed. Cir. 2020)).

Despite the fact that its criminal investigation was pending at the time of the CIT's decision, and the Indictment was returned while the CIT's decision was on appeal before the Federal Circuit, the government never disputed that liquidation was final. Because the government has conceded and accepted a final judgment that it is not entitled to recover, the government is now barred by the doctrine of judicial estoppel from asserting a "clearly inconsistent" position at sentencing seeking "restitution" for something it has no right to recover. (*See* Dkt.346 at 9-11*)*

The Perfectus Defendants also object to Government's position that the Perfectus Defendants pay restitution in the collective amount of $124,270,000 to a list of purported "institutional investors." The 28 "institutional investors" identified by the government are not "victims" under the MVRA. (Dkt.333 at 25) They were not, at any time, beneficial owners of the common stock in CZW, and, therefore by definition, could not have suffered a loss.

Each of the 28 institutional investors is either a United States or foreign "Exchange Traded Fund" ("ETF") — who simply oversee the management and marketing of ETFs. These management and advisory funds are not exposed to the risks of changes in the stock prices of the individual companies that comprise the ETF. ETFs are distinct from their clients (referred to as referred to as "Authorized

Participants"), who purchase and hold the shares of the individual stocks that comprise ETFs. In short, none of the firms identified by the Probation have any property interests in the CZW stock, or can be shown to have suffered any property losses and do not qualify as "victims."

Moreover, they cannot be used as proxies for unnamed and unidentified victims because the identification of the actual victims "is a statutory prerequisite to the application of the MVRA." *United States v. Catoggio*, 326 F.3d 323, 328 (2nd Cir. 2003).

Even if there were identified victims here —which there are not—there is no reliable evidence of a quantifiable loss. The basis adopted by the government used to measure shareholder restitution proposed by Probation is wholly unreliable and therefore unusable.

The methodology purportedly relied on as the measure of shareholder restitution is defined in economic terms as a "corrective disclosure." But no "corrective disclosure" occurred here. The government relies solely upon The Dupré Report, authored and released by a then-anonymous short seller who expressly admitted to having a financial interest in the potential decline in CZW's stock price. (Dkt.346 at 16, Dkt.333 at 13) This is wholly inadequate. The Ninth Circuit held that blogs posts "authored by anonymous short-sellers who had a financial incentive to convince others to sell" and that "included disclaimers from the authors stating that they made 'no representation as to the accuracy or completeness of the information set forth in this article' could not plausibly constitute corrective disclosures." *In re BofI Holding, Inc. Security Litigation*, 977 F.3d 781, 797 (9th Cir. 2020) (Dkt.346 at 16).

Alternatively, applying well-settled law on causation in the securities fraud context, it is clear that the government's position is not based upon any reliable

evidence to prove either but for causation or proximate cause for the purported aggregated loss. (Dkt.346 at 16)

In addition, such proof of aggregate loss would be insufficient. For restitution purposes, proof of loss would require information related to the thousands of actual shareholders and the possibly thousands of individual transactions made by those shareholders at a myriad of points in time, before assessing whether any one or more of the actual shareholders were affected by the events at issue in this case. No such assessment of this type with respect to any actual shareholders of ZCW stock has been made by the government, or anyone else. Nor is it likely possible.

Finally, the amounts of restitution quantified for each purported individual victim is significantly and irreparably flawed. As inferred from Probation's description of its estimate, any loss is measured by the change in CZW's share price multiplied by the number of shares managed by each fund at the time of the loss. Since CZW was listed on the SEHK, shares were priced and traded in Hong Kong dollars. As such, share price changes would necessarily have to be converted to USD. The one-day price change relied on by Probation, as properly converted, amounts to $0.04 USD per share – a number to which the government's expert agrees.[1]

However, under these premises, the government's estimates of "losses" by these entities do not make mathematical sense based upon the actual dollar value of the stocks under their management for shareholders.

---

[1] The government's expert agreed that share price change associated with release of the Dupré Report amounted to a decline of $0.04 USD per share. (Dkt.346 at 19)

A review of the three largest funds listed—Dimensional Fund Advisors LP, The Vanguard Group Inc., and Norges Bank Investment Management—illustrates the enormous discrepancies. In August 2015, Dimensional managed 48.2 million shares; Vanguard managed 39.5 million shares; and Norges managed 20 million shares. Based on the $0.04 USD per share decline, losses, in US dollars, would amount to: (i) $1.93 million for Dimensional; (ii) $1.58 million for Vanguard; and (iii) $800,000 for Norges. Yet the presentence report claims that Dimensional's loss equals $43.3 million, Vanguard's loss $35.2 million, and Norges' loss $17.6 million. (Dkt.346 at 19) In the aggregate, this amounts to an overestimate in the absurd amount of approximately $93.4 million for these three funds alone – more than ***twenty times*** the proper calculation in USD.

This absurdity continues when comparing the identified losses listed in the Presentence report against the actual values of the managed stocks in 2015. Using available published information, in 2015 Norges indicated that the year-end value of the CZW stock under its management amounted to $11.7 million USD. Yet, Probation represents in its report that Norges, supposedly suffered a one-day loss of $17,582,107.18 USD, which is 50% greater than the entire value of its2015 managed holdings -- a completely nonsensical mathematical result. (*See* Dkt.364 at 18-20, 25)

Probation's calculations, as adopted by the government, are fraught with error, factually and mathematically impossible, and entirely unreliable.

B. The Government Contends, Without Any Factual Basis, That the Perfectus Defendants Have the Financial Ability to Pay $1.5 Billion.

The government's position that the Perfectus Defendants have net assets of at least $1.5 billion is apocryphal – merely a counterfactual pretense for their requests for restitution and/or fines at sentencing. In making this argument, the government chooses to ignore their own allegations in the indictment and evidence

at trial, as well as well-recognized accounting principles. In sum, they choose to assume, not prove, that the defendants have assets, in cash or otherwise, of $1.5 billion, and that all of the companies' liabilities should be simply disregarded. (Dkt.348 at 9-12)

Considering the Governments own factual allegations in support of the convictions, this position is untenable. The government continues to assert that:

i. Funds were provided by Mr. Liu, the alleged real owner of Perfectus, to purchase the aluminum pallets. (Dkt.348 at 10-11; Dkt.333 at 12)

ii. The funds provided were used by Perfectus to purchase the aluminum pallets. (*Id.*)

iii. None of the aluminum pallets were ever sold in the United States after importation. (Dkt.333 at 11-12)

It is recognized, common practice for owners and/or investors in corporate entities to provide capital in the form of loans to fund the entity's operations, such as the purchase of inventory and business operating expenses. And it is normal accounting practice to recognize such funds as loans. Similarly, it is common business practice to finance inventory through the use of loans. In either case, funds used to make such purchases are recognized as liabilities of the corporate entity. Offsetting these liabilities are the assets, here the inventory of purchased products.

Yet, the government claims that the funds provided to Perfectus should have been recognized as "income" rather than a liability (Dkt.348 at 11, Fn. 6), despite the fact that they allege no income producing transactions associated with the creation of such funds.

They similarly contend that the loans and accounts payables of Perfectus were "fictitious" (*Id.*), and "should be disregarded" while continuing to allege, to

the contrary: that the company operated and used real money to fund both operations and the purchase of the pallets. In short, Perfectus, regardless of the convictions here, properly accounted for the assets and liabilities associate with its operations, they are real, and neither can be disregarded based on the factual record here.

The evidence is clear. The Perfectus Defendant entities failed financially, and in 2015 had a net asset value, properly accounted for, in the amount of a negative $80 million. (Dkt.333 at18-20) Moreover, the disposition of assets and the settlement of liabilities is a normal process in the winddown of failing corporate entities.

The only conclusion that can be drawn from the facts in this case is that the Defendant corporations have a combined negative net asset value, and the only assets remaining are the pallets that have been seized and are being held by the government. There are no other sources of funds, real or imagined, to support the government's request for a payment by the Perfectus Defendants of $1.5 Billion.

C. <u>The Government's Contention That a Fine OF $1.96 Billion Is Applicable under the Statutes Is Wrong.</u>

Finally, citing U.S.S.G. § 8C1.1, the government takes the position that, if the Court does not order restitution of $1.96 billion, then "the Court impose a fine sufficient to divest each defendant of all assets" in that same amount of $1.96 billion. (Dkt.348. at 8) But such an enormous fine, in excess of the Perfectus Defendants' net assets, has no factual or statutory basis.

Even if the Court were to find that § 8C1.1 applies, the plain language of that guideline section acknowledges that the applicable fine must be limited to the statutory maximum. *See* U.S.S.G. § 8C1.1 ("the fine shall be set at an amount (subject to the statutory maximum) sufficient to divest the organization of all its net assets.") Thus, as a threshold matter, the Court should reject any suggestion by

the government that § 8C1.1 permits the Court to order a fine of the magnitude that the government now suggests. If a fine is deemed appropriate, such fine under § 8C1.1 must be capped at the statutory maximum permitted.

As detailed above, the Perfectus Defendants are not operating companies and have had no business activity in calendar years 2016 through the present (Dkt.333 at 20) Their existing assets are limited to the aluminum pallets currently in the possession of the government. (Dkt.333 at 20) They have had no revenue since 2015; no facilities; no inventory (other than the seized pallets) and no cash accounts. The financials show that prior to ceasing operations in 2015 that the Perfectus Defendants had a combined negative "net asset" value in excess of $80 million. (Dkt.333 at. 18)

The Perfectus Defendants were convicted here of one count of conspiracy, nine counts of wire fraud, seven counts of customs fraud, and seven counts of international money laundering — twenty-four counts total. (Dkt.276) The applicable statutes for the conspiracy conviction, 18 U.S.C. § 371, and for the money laundering convictions, 18 U.S.C. § 545, do not identify the maximum fine for such offenses. In that case, the fines for organizations set forth in 18 U.S.C. § 3571 apply. As for the wire fraud convictions, 18 U.S.C. section 1343 only sets a maximum fine in circumstances that do not apply here. *See* 18 U.S.C. § 1343. Thus, the fines for organizations set forth in § 3571 also apply to the wire fraud convictions. Applying § 3571, the maximum fine allowed in this case is either not more than $500,000 for a felony, or an alternative fine of "not more than the greater of twice the gross gain or twice the gross loss, unless imposition of a fine under this subsection would unduly complicate or prolong the sentencing process." 18 U.S.C. § 3571(d).

Here, the alternative fine described in section 3571, subsection (d) does not apply. The record is clear that the Perfectus Defendants did not realize a gain of

any kind. In fact, the government took the position at trial that "not a single pallet imported by Perfectus was ever sold in the U.S." (Dkt.333 at 12, ¶ 48) Thus, there is no evidence that the Perfectus Defendants ever realized any "gains" in revenue or otherwise from the imported pallets in the U.S. -- because the government admits none were sold. Similarly, as discussed in full in Perfectus Defendants' joint objections the Presentence Report (Dkt.346), there were no losses to any "victims." (*See e.g.,* Dkt.346, at 2-11). The ADCVD duties do not constitute losses to the government and, in any event, the right to collect any such duties were found uncollectable by court decision and judicial estoppel. (Dkt.346 at.11)

Accordingly, the maximum fine for counts One through Seventeen cannot exceed $8.5 million—$500,000 multiplied by the 17 convictions. In addition, the maximum fine for Counts eighteen through Twenty-four cannot exceed $20,459,650 – the total amount of the monetary transactions alleged ($10,229,825) multiplied by Two under 18 U.S.C. 1956 (a) (2). Combining these statutory maximum fines under the applicable statutes results in a maximum fine in this case for all convicted counts of $28,959,975.

Government also takes the position that the Pallets are not available for satisfying restitution or fines because they have been seized by the government. However, seizures by the government of corporate assets remain the property of the defendant unless forfeited pursuant to court order. *See* F.R.Crim.P. 32.2. The government seems to misunderstand the difference between "seizure" and "forfeiture." With seizure the government only obtains possession; only with a court ordered forfeiture at sentencing does the government obtain title. *See Langbord v. United States Department of Treasury*, 832 F.3d 170, 183 (3rd Cir. 2016). All three forfeiture allegations of the indictment under 18 U.S.C. § 981 (a) (1) (c) and §892, provide, as required by Rule 32.2, that "the United States will seek forfeiture ***as part of*** any sentence." (Dkt.1 at 49-58) In addition, Supreme

court precedent is to the contrary. Forfeitures –payments in kind – are "fines" if they constitute punishments for an offense, must be considered as such at the time of sentencing, and should be counted as fines in light of the Excessive Fines clause of the Eighth Amendment. *United States v. Bajakjian*, 524 U.S. 321 (1998).

Here in light of the maximum fines of $28,959,975 that can be imposed under the applicable statutes, and the value of the pallets, which the Presentence Report estimates at $60,141,98, a combination of both as part of the sentencing would amount to a fine that is more than three times the maximum statutory amount, and would constitute an excessive fine in violation of the Eighth Amendment.

## IV. CONCLUSION

For the foregoing reasons, the Court should sentence the Perfectus Defendants to terms of probation that do not include restitution. If, however, the Court is inclined to order that restitution be paid as a condition of probation, the Perfectus Defendants respectfully request that an evidentiary hearing be held to determine the total amount of restitution owed, the apportionment of the restitution obligation among the defendants, and the appropriate payment schedule for each defendant.

Moreover, if the Court is inclined to order any fines in this case, the Perfectus Defendants respectfully request that they be set in a manner consistent with §8C1.1 as not in excess of the Perfectus Defendants' net assets, and in conformance with the Guidelines, in a calculated amount not to exceed the statutory maximum of $28,959,975.

Dated March 14, 2022

By: ______________________

Robert F. Ruyak (*Pro Hac Vice*)
RUYAKCHERIAN LLP

Attorneys for Defendants
PERFECTUS ALUMINIUM INC.,
Aka "PERFECTUS ALUMINUM, INC."
and PERFECTUS ALUMINUM
ACQUISITIONS LLC