TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ROGER A. HSIEH (Cal. Bar No. 294195)
GREGORY D. BERNSTEIN (Cal. Bar No. 299204)
Assistant United States Attorneys
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0600/3183
     Facsimile: (213) 894-6269
     E-mail:    roger.hsieh@usdoj.gov
                gregory.bernstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                  UNITED STATES DISTRICT COURT

             FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 19-282-RGK |
|        Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANTS' OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT; UPDATED SENTENCING POSITION; EXHIBIT |
|          v. | |
| ZHONGTIAN LIU, <br>   aka "Liu Zhongtian," <br>   aka "Chairman," <br>   aka "Uncle Liu," <br>   aka "UL," <br>   aka "Big Boss," <br> CHINA ZHONGWANG HOLDINGS <br>   LIMITED, <br>   aka "ZW," <br>   aka "Mother Ship," <br> ZHAOHUA CHEN, <br>   aka "Chen Zhaohua," <br>   aka "Uncle Chen," <br> XIANG CHUN SHAO, <br>   aka "Johnson Shao," <br> PERFECTUS ALUMINIUM INC., <br>   aka "Perfectus Aluminum <br>   Inc.," <br> PERFECTUS ALUMINUM <br>   ACQUISITIONS, LLC, <br> SCUDERIA DEVELOPMENT, LLC, <br> 1001 DOUBLEDAY, LLC, <br> VON KARMAN – MAIN STREET, LLC, <br>   and | |

1  10681 PRODUCTION AVENUE, LLC,

2          Defendants.

3

4

5       Plaintiff United States of America, by and through its counsel

6  of record, the United States Attorney for the Central District of

7  California and Assistant United States Attorneys Roger A. Hsieh and

8  Gregory D. Bernstein, hereby files its Response to Defendants'

9  Objections to the Presentence Investigation Report ("PSR") and

10 Updated Sentencing Position.

11      This Response is based upon the attached memorandum of points

12 and authorities, the trial transcripts filed with the Court, the

13 exhibits introduced at trial, the files and records in this case, and

14 such further evidence and argument as the Court may permit.

15 Dated: March 14, 2022          Respectfully submitted,

16                                TRACY L. WILKISON
                                  United States Attorney
17
                                  SCOTT M. GARRINGER
18                                Assistant United States Attorney
                                  Chief, Criminal Division
19

20                                    /s/
                                  ROGER A. HSIEH
21                                GREGORY D. BERNSTEIN
                                  Assistant United States Attorneys
22
                                  Attorneys for Plaintiff
23                                UNITED STATES OF AMERICA

24

25

26

27

28

1

**TABLE OF CONTENTS**

2    DESCRIPTION                                                          PAGE

3    MEMORANDUM OF POINTS AND AUTHORITIES.................................1

4    I.    INTRODUCTION...................................................1

5    II.   ARGUMENT.......................................................2

6          A.    The MVRA Applies to Conspiracy and Crimes Committed by
7                Fraud or Deceit.........................................2

8                1.    Unpaid Duties Under AD/CVD Orders are Property
                       and Alternatively, Customs Fraud is a Crime
9                      Involving "Fraud or Deceit" Requiring Restitution
                       under the MVRA....................................4

10               2.    Defendants Are Responsible for the Restitution
11                     Based on the Actions of Their Co-Conspirators.....7

12               3.    Probation Does Not Overstate CBP's Losses........10

13         B.    The MVRA Requires that Defendants Pay Restitution for
                 Their Wire Fraud Scheme Convictions....................11

14         C.    The Court Should Order Restitution on a Joint Basis....15

15         D.    Defendants Should be Ordered to Pay Restitution
16               Immediately...........................................15

         E.    The Court May Alternatively Order Restitution Under 18
17               U.S.C. § 3663 or Should Order a Fine...................16

18         F.    Requested Sentence.....................................17

19               1.    Five Years' Probation............................17

20               2.    Special Assessment...............................18

21               3.    Restitution......................................18

22   III. CONCLUSION....................................................18

23

24

25

26

27

28

1

## Table of Authorities

2

**Federal Cases**

3

Cleveland v. United States,

4

  531 U.S. 12 (2000) .......................................... 5

5

Kelly v. United States,

6

  140 S. Ct. 1565 (2020) ...................................... 5

7

Paroline v. United States,

8

  572 U.S. 434 (2014) .......................................... 9

9

Pasquantino v. United States,

10

  544 U.S. 349 (2005) ....................................... 3, 4

11

United States v. Ali,

12

  620 F.3d 1062 (9th Cir. 2010) ................................. 5

13

United States v. Bengis,

14

  631 F.3d 33 (2d. Cir. 2011) .................................. 5

15

United States v. Bingham,

16

  653 F.3d 983 (9th Cir. 2011) ................................. 7

17

United States v. Bogart,

18

  490 F. Supp. 2d 885 (S.D. Ohio 2007) ......................... 8

19

United States v. Burger,

20

  739 F.2d 805 (2d. Cir. 1984) .............................. 9-10

21

United States v. Cloud,

22

  872 F.2d 846 (9th Cir. 1989) ................................. 6

23

United States v. Conley,

24

  349 F.3d 837 (5th Cir. 2003) ................................. 4

25

United States v. Doe,

26

  488 F.3d 1154 (9th Cir. 2007) ................................ 14

27

28

United States v. Edwards,

  595 F.3d 1004 (9th Cir. 2010) ................................... 6

United States v. Hankins,

  858 F.3d 1273 (9th Cir. 2017) ............................... 3, 7

United States v. Hansen,

  498 F. Supp. 3d 1332 (D. Idaho 2020) ........................ 14

United States v. Johnson,

  875 F.3d 422 (9th Cir. 2017) ................................... 3

United States v. Kovall,

  857 F.3d 1060 (9th Cir. 2017) ............................... 2, 7

United States v. Luis,

  765 F.3d 1061 (9th Cir. 2014) ................................. 3

United States v. Maddux,

  917 F.3d 437 (6th Cir. 2019) ................................... 5

United States v. Meredith,

  685 F.3d 814 (9th Cir. 2012) ............................... 2-3

United States v. Padilla,

  2018 WL 4365494 (D. Idaho Sept. 13, 2018) ................... 14

United States v. Riley,

  335 F.3d 919 (9th Cir. 2003) ................................... 7

United States v. Sunchild,

  637 F. App'x 316 (9th Cir. 2016) ............................ 14

United States v. Thomsen,

  830 F.3d 1049 (9th Cir. 2016) ............................. 7, 15

United States v. Tyler,

  767 F.2d 1350 (9th Cir. 1985) ................................. 10

iii

United States v. Vandewater Int'l Inc., No. 17-CV-4393-RGK,

  2020 WL 4372115 (C.D. Cal. June 23, 2020) .............. 6, 10, 13

United States v. Vera,

  770 F.3d 1232 (9th Cir. 2014) ................................ 3-4

United States v. Zilgitt,

  286 F.3d 128 (2d Cir. 2002) ................................... 4

United States v. Zolp,

  479 F.3d 715 (9th Cir. 2007) ................................ 14


**Federal Statutes**

18 U.S.C. § 371 ........................................... 2, 3

18 U.S.C. § 545 ......................................... 2, 3, 4

18 U.S.C. § 1343 ........................................... 3

18 U.S.C. § 1956 ......................................... 2, 3

18 U.S.C. § 3013 .......................................... 18

18 U.S.C. § 3551 .......................................... 17

18 U.S.C. § 3561 .......................................... 17

18 U.S.C. § 3571 .......................................... 17

18 U.S.C. § 3572 ........................................ 15, 17

18 U.S.C. § 3663 ........................................ 16, 17

18 U.S.C. § 3663A ................................... 2, 3, 7, 15

18 U.S.C. § 3664 .......................................... 15

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3      The Mandatory Victim Restitution Act ("MVRA") requires that the

4 Court order restitution for the crimes of conviction against each of

5 the six the Perfectus and Warehouse defendants in the amount of

6 $1,841,812,878, consisting of: (1) $1,836,244,745 for defrauding CBP

7 through their conspiracy and customs fraud convictions; and

8 (2) $5,568,133 for defrauding institutional investors through their

9 conspiracy and wire fraud scheme convictions.  The defendants'

10 objections to the PSR (Dkts. 342-48) do not have merit.  The MVRA

11 requires that the Court order each of the six defendants pay

12 restitution for two separate reasons: (1) a jury convicted

13 defendants of crimes against property; and (2) defendants' committed

14 their crimes by fraud or deceit.

15      Each of the defendants were convicted of conspiracy, wire

16 fraud, and customs fraud.  As such, the MVRA holds defendants liable

17 for victims directly harmed by defendants' criminal conduct in the

18 course of their scheme or conspiracy.  Further, as co-conspirators,

19 the defendants are liable for restitution for a victim's losses that

20 were reasonably foreseeable to that defendant.  Defendant Zhongtian

21 Liu controlled each of the Perfectus and Warehouse defendants and

22 used them to carry out his multiple, brazen criminal schemes.  As

23 shown at trial, it was not only reasonably foreseeable to each

24 defendant that the victims would suffer losses of more than $1.8

25 billion, but that all six defendants were formed for a criminal

26 purpose and played an integral role in the conspiracy to defraud

27 investors and CBP.  For the reasons discussed below, the Court

28

1  should order each of the six Perfectus and Warehouse defendants to

2  immediately pay restitution in the amount of $1,841,812,878.

3  **II.  ARGUMENT**

4      **A.    The MVRA Applies to Conspiracy and Crimes Committed by
            Fraud or Deceit**

5

6      Under the MVRA, a court must order restitution for an offense

7  against property in which a victim suffers a pecuniary loss.  18

8  U.S.C. § 3663A(c)(1).[1]  The MVRA also applies to "any offense

9  committed by fraud or deceit."  18 U.S.C. § 3663A(c)(1)(A)(ii); see

10 also United States v. Kovall, 857 F.3d 1060, 1064 (9th Cir. 2017)

11 (MVRA requires court to order restitution for "any offense committed

12 by fraud or deceit").  The MVRA applies to defendants' conspiracy

13 conviction under 18 U.S.C. § 371 (Count 1) for two separate reasons,

14 all of the objects of the conspiracy (1) involve crimes against

15 property in which the victim suffered a loss; and (2) are offenses

16 committed by fraud or deceit.

17     First, all four objects of the charged conspiracy (Indictment

18 ¶ 32) are crimes against property: (1) defrauding CBP (18 U.S.C.

19 § 371); (2) defrauding shareholders through wire fraud (18 U.S.C.

20 § 1343); (3) defrauding CBP of customs duties through customs fraud

21 (18 U.S.C. § 545); and (4) laundering money internationally to

22 promote wire fraud and customs fraud (18 U.S.C. § 1956).  See, e.g.,

23 United States v. Meredith, 685 F.3d 814, 827 (9th Cir. 2012)

24 (applying MVRA to conspiracy to defraud the government agency in

25

26  _____

27     [1] The MVRA requires that for offenses involving as an element "a
    scheme, conspiracy, or pattern of criminal activity," that
    restitution be ordered for victims "directly harmed by the
28  defendant's criminal conduct in the course of the scheme, conspiracy,
    or pattern."  18 U.S.C. § 3663A(a)(2) (emphasis added).

1   violation of 18 U.S.C. § 371); <u>United States v. Johnson</u>, 875 F.3d

2   422, 425-26 (9th Cir. 2017) (finding MVRA applies to wire fraud

3   scheme and restitution can include all victims harmed by scheme

4   beyond the count of conviction); <u>Pasquantino v. United States</u>, 544

5   U.S. 349, 357 (2005) (noting government's interest in uncollected tax

6   revenue "is a straightforward 'economic' interest"); <u>United States v.</u>

7   <u>Luis</u>, 765 F.3d 1061 (9th Cir. 2014) (holding conspiracy to engage in

8   money laundering under 18 U.S.C. § 1956 constitutes an offense

9   against property under the MVRA). Thus, restitution is mandatory

10  under the MVRA for defendants' conspiracy conviction.

11      Second, and alternatively, the MVRA applies to defendants'

12  conspiracy conviction because all four objects involve "fraud or

13  deceit." <u>See</u> 18 U.S.C. § 371 (scheme to defraud the United States);

14  18 U.S.C. § 1343 (wire fraud requires scheme or artifice to defraud);

15  18 U.S.C. § 545 (customs fraud requires intent to defraud the United

16  States); and 18 U.S.C. § 1956(a)(2)(A) (international money

17  laundering requires intent to promote unlawful activity of wire fraud

18  and customs fraud). Thus, the MVRA also applies to these offenses

19  "committed by fraud or deceit." 18 U.S.C. § 3663A(c)(1)(A)(ii); <u>see</u>

20  <u>also</u> <u>United States v. Hankins</u>, 858 F.3d 1273, 1276 (9th Cir. 2017)

21  (noting MVRA mandates restitution to victims of offenses "committed

22  by fraud or deceit").

23      Defendants' citation to cases involving the application of

24  mandatory-minimum sentences and increasing a defendant's sentencing

25  exposure beyond the statutory maximum have no bearing on defendants'

26  MVRA restitution obligations. <u>See</u> Dkt. 343 (Warehouse Defendants'

27  Objections to PSR) at 6 (citing <u>United States v. Vera</u>, 770 F.3d 1232

28  (9th Cir. 2014) (addressing drug conspiracy and errors affecting drug

1  quantity and mandatory-minimum sentence); United States v. Conley,

2  349 F.3d 837 (5th Cir. 2003) (finding error where defendant sentenced

3  above statutory maximum for count of conviction and found not guilty

4  of counts with higher maximum sentence); United States v. Zilgitt,

5  286 F.3d 128, 136 (2d Cir. 2002) (addressing drug conspiracy and

6  errors affecting drug quantity and sentencing exposure)).  Here,

7  there is no issue regarding facts that may increase the mandatory-

8  minimum or statutory maximum sentence.  Instead, defendants are

9  required to pay restitution under the MVRA in amounts shown by a

10  preponderance of the evidence.  18 U.S.C. §§ 3663A, 3664(e).

> 1.  Unpaid Duties Under AD/CVD Orders are Property and
>      Alternatively, Customs Fraud is a Crime Involving
>      "Fraud or Deceit" Requiring Restitution under the MVRA

13      Defendants' fraudulent scheme to criminally evade more than $1.8

14  billion in duties owed under AD/CVD orders deprived CBP of its

15  property right to money owed, and thus, the MVRA applies to

16  defendants' customs fraud convictions under 18 U.S.C. § 545.  In

17  Pasquantino, the defendants failed to declare liquor imported to

18  Canada and evaded paying Canada excise tax.  544 U.S. at 353.  The

19  Supreme Court stated that "[t]he right to be paid money has long been

20  thought to be a species of property" and, as such, held that Canada's

21  right to uncollected import tax was "money or property" for purposes

22  of wire fraud.  Id.  CBP's "entitlement to tax revenue is a

23  straightforward 'economic' interest," and like in Pasquantino, "the

24  [g]overnment alleged and proved that [defendants'] scheme aimed at

25  depriving [the government] of money to which it was entitled by law."

26  Id. at 357.  The right to collect money, such as in the form of taxes

27  or duties, is "property" as the term ordinarily is employed.  Id. at

28  356.

4

Defendants' reliance on <u>Cleveland</u> is misplaced.[2]  In <u>Cleveland</u>, the defendants fraudulently obtained video poker licenses.  <u>Cleveland v. United States</u>, 531 U.S. 12, 22 (2000).  There was no dispute that the defendant in <u>Cleveland</u> paid the government "its proper share of revenue," and thus the government suffered no economic loss.  <u>Id.</u>; <u>see also id.</u> (noting government "nowhere allege[d] that Cleveland defrauded the State of any money to which the State was entitled").  Here, defendants evaded more than $1.8 billion in duties owed to CBP, a clear economic interest unlike the regulation of video poker licenses in <u>Cleveland</u> or the regulation of the use of toll lanes in <u>Kelly v. United States</u>, 140 S. Ct. 1565 (2020).

Other courts likewise have held that the right to unpaid taxes or money qualifies as a property right.  See <u>United States v. Maddux</u>, 917 F.3d 437, 441 (6th Cir. 2019) (holding that the government had a property right to uncollected taxes on cigarette sales when the defendants falsely categorized the sale of cigarettes as the sale of gifts, novelties, and souvenirs); <u>United States v. Bengis</u>, 631 F.3d 33, 40 (2d. Cir. 2011) (depriving government of money it was due, like uncollected tax revenue, is an offense against property under the MVRA); <u>United States v. Ali</u>, 620 F.3d 1062, 1065, 1067 (9th Cir. 2010) (scheme to defraud victim of right to full payment qualified as "money or property" under mail and wire fraud statutes).

---

[2] Defendants raised the same arguments regarding their $1.8 billion customs fraud scheme not affecting a property right in their motion to dismiss the indictment.  See Dkt. 186 at 18 (arguing AD/CVD orders did not establish a valid property right) (citing <u>Cleveland v. United States</u>, 531 U.S. 12 (2000); <u>Kelly v. United States</u>, 140 S. Ct. 1565 (2020)).  The Court did not directly address defendants' argument in denying the motion to dismiss but did note that defendants "skip[ped] over the 'money' portion of 'money or property'" when arguing that the evasion of $1.8 billion in customs duties did not apply to wire fraud.  Dkt. 212 at 8 n.3.

1    Defendants' argument regarding liquidation in a separate civil
2    matter does not change the analysis.  This Court has held that
3    customs regulations regarding liquidation in separate civil matters
4    have no bearing on other remedies to collect unpaid duties.  See
5    United States v. Vandewater Int'l Inc., No. 17-CV-4393-RGK, 2020 WL
6    4372115, at *8 (C.D. Cal. June 23, 2020) ("[L]iquidation does not
7    foreclose other remedies to collect unpaid duties") (citing United
8    States v. Aegis Sec., Inc. Co., 422 F. Supp. 3d 1328, 1344 (Ct.
9    Int'l. Trade 2019)).  Even if the Department of Commerce may not
10   retroactively suspend liquidation and collect unpaid duties, the
11   government may still bring fraud suits against a defendant.  Id. at
12   *7.  Liquidation is "unconcerned with the intent of the importer" and
13   thus "a different animal" from fraud. [3]  Id.; see also id. ("Because
14   an importer's intent is irrelevant to liquidation, Commerce
15   rationally elected to design a regulatory scheme that promotes
16   administrative finality.  The rationale underpinning fraud statutes
17   like the FCA is understandably different.").

18   Additionally, "[c]riminal restitution is mandatory under the
19   MVRA and cannot be waived by a prior civil settlement" involving the
20   same victims.  United States v. Edwards, 595 F.3d 1004, 1014 (9th
21   Cir. 2010); see also United States v. Cloud, 872 F.2d 846, 853 (9th
22   Cir. 1989) (affirming criminal restitution order even though victim
23   banks had settled with defendant prior to sentencing and waived "all
24   direct rights or causes of action").  The MVRA mandates restitution

25

26   [3] The jury rejected defendants' attempts at trial to raise the
     concept of liquidation in separate civil matters regarding
27   defendants' guilt, and the Court should do so here regarding
     restitution.  See, e.g., Vol. 3, 8/12/21 Tr. at 7-9, 31, 39-42; Vol.
28   5, 8/16/21 Tr. at 62-63; Vol. 7, 8/18/21 Tr. at 24-25, 27-28, 37;
     Vol. 8, 8/19/21 Tr. at 95-97; Vol. 9, 8/20/21 Tr. at 76.

to victims in this case, and no case cited by defendants regarding

liquidation (or otherwise) supports an alternate conclusion.[4]

As explained above, defendants' customs fraud convictions

mandate restitution under the MVRA for an additional, independent

reason: these are offenses "committed by fraud or deceit."  18 U.S.C.

§ 3663A(c)(1)(A)(ii); see Kovall, 857 F.3d at 1064 (MVRA requires

court to order restitution for "any offense committed by fraud or

deceit"); Hankins, 858 F.3d at 1276 (same).

### 2.    Defendants Are Responsible for the Restitution Based on the Actions of Their Co-Conspirators

Co-conspirators are "criminally liable for reasonably

foreseeable overt acts committed by others in furtherance of the

conspiracy."  United States v. Bingham, 653 F.3d 983, 997 (9th Cir.

2011).  Likewise, co-conspirators are also liable for restitution for

a "victim's losses [that] were reasonably foreseeable to that

defendant."  United States v. Thomsen, 830 F.3d 1049, 1065 n.13 (9th

Cir. 2016); see also United States v. Riley, 335 F.3d 919, 931-32

(9th Cir. 2003) (noting co-conspirators are "vicariously liable for

reasonably foreseeable substantive crimes committed by a

coconspirator in furtherance of the conspiracy" and restitution is

not confined to harm by the particular offense of conviction).  Under

the MVRA, "if the offense of conviction involves 'as an element a

scheme, conspiracy, or pattern of criminal activity,' th[e] Court

must order restitution to all victims harmed by the conspiracy

---

[4] The Warehouse defendants raise similar arguments regarding liquidation as to a purported lack of causation between the Warehouse defendants and CBP's losses.  See Dkt. 343 at 13-14.  The Court should reject these arguments for the same reasons noted above.

7

itself[.]"  United States v. Bogart, 490 F. Supp. 2d 885, 904 (S.D. Ohio 2007).

Here, the Warehouse defendants were controlled by defendant Liu and created for the purpose of furthering defendant Liu's fraudulent schemes.  See, e.g., Dkt. 336 (1001 Doubleday PSR) ¶¶ 57, 97.  The Warehouse defendants played a key role in the customs fraud scheme, storing the millions of aluminum pallets which co-conspirators caused to be fraudulently reported as not subject to the 2011 AD/CVD orders. It was certainly reasonably foreseeable to the Warehouse defendants – as they were controlled by the main architect of each fraudulent scheme – that by playing an integral role in the customs fraud scheme, that CBP would not be paid the more than $1.8 billion it was owed.  The Perfectus defendants do not contest causation regarding the customs fraud losses.  See Dkt. 346 at 7-11.

Defendants' assertion that their fraudulent scheme to avoid $1.8 billion in AD/CVD duties occurred before any conduct by the Warehouse defendants (Dkt. 343 at 13) is incorrect.  The Warehouse defendants were formed for the purpose of carrying out defendant Liu's fraudulent schemes in:

- October 2007: Scuderia Development, which purchased the Riverside Warehouse in October 2014 (Perfectus PSR ¶ 34);

- October 2008: 1001 Doubleday, which purchased the Ontario Warehouse in October 2008 (Perfectus PSR ¶ 35);

- March 2009: Von Karman – Main Street, which purchased the Irvine Warehouse in March 2009 (Perfectus PSR ¶ 36); and

- August 2009: 10681 Production Avenue, which purchased the Fontana Warehouse in September 2009 (Perfectus PSR ¶ 37).

1    The defendants engaged in their scheme to defraud CBP out of
2    $1.8 billion in duties through the submission of false Forms 7501
3    from around January 2011 through June 2014.  (Perfectus PSR ¶¶ 49,
4    55.)  All four Warehouse defendants were formed years before the
5    first execution of the customs fraud scheme.  Further, all four
6    warehouses, including the Riverside Warehouse, played an integral
7    role in the customs fraud scheme by storing the millions of aluminum
8    pallets.  See, e.g., Vol. 4, 8/12/21 Tr. at 77-78, Vol. 6; 8/17/21
9    Tr. at 48-51, 158-60; see also Perfectus PSR ¶ 52.  The Warehouse
10   defendants claim that "Jasmine Wang took ownership of the Warehouse
11   Defendants in or around September 2013."  (Dkt. 343 at 15.)  The
12   Warehouse defendants, however, fail to mention that Wang's
13   declarations that she was the ultimate beneficial owner of the four
14   warehouses was "false and misleading as codefendant Liu funded the
15   purchase of the warehouses and is therefore the ultimate beneficial
16   owner of the warehouse properties."  (Perfectus PSR ¶ 14.)

17   The Warehouse defendants' citation to inapposite case law
18   regarding causation does not change the fact that it was more than
19   reasonably foreseeable to Warehouse defendants that CBP would suffer
20   losses for the fraudulently imported pallets stored in the Warehouse
21   defendants' properties.  See Dkt. 343 (Warehouse Defendants'
22   Objection to the PSR) at 12-13 (citing Paroline v. United States, 572
23   U.S. 434 (2014) (addressing individual defendant's possession of
24   child pornography conviction and victim's restitution request for $3
25   million in lost future wages, $500,000 in counseling costs,
26   attorney's fees, and costs); United States v. Burger, 739 F.2d 805
27   (2d. Cir. 1984) (addressing individual defendant's possession of
28   counterfeit currency and order awarding restitution to victim who was

1   not given any counterfeit currency); <u>United States v. Tyler</u>, 767 F.2d
2   1350 (9th Cir. 1985) (addressing individual defendant's conviction
3   regarding timber theft and reduction in value of property with no
4   reasonably foreseeability of acts of co-conspirators at issue)).
5   Further, this Court's decision in <u>Vadewater</u> forecloses <u>Tyler</u>'s
6   applicability to the case at hand.  <u>See</u> <u>Vandewater Int'l Inc.</u>, 2020
7   WL 4372115, at *8 ("[L]iquidation does not foreclose other remedies
8   to collect unpaid duties").  The Warehouse defendants' vital and
9   active role in the conspiracy to defraud CBP and substantive customs
10  fraud counts – as evidenced at trial and through their convictions –
11  makes the Warehouse defendants liable for the reasonably foreseeable
12  restitution of more than $1.8 billion due to CBP.

13              3.   <u>Probation Does Not Overstate CBP's Losses</u>

14       Defendants' argument that the fraudulently imported pallets by
15  Aluminum Shapes should not count towards restitution ignores that the
16  jury convicted all defendants of specific counts involving the
17  importation of pallets by Aluminum Shapes.  (<u>See</u> Indictment ¶ 40,
18  Counts 11, 12, 15, and 17; Ex. 212.)  Further, defendant Liu acquired
19  and controlled Aluminum Shapes (Perfectus PSR ¶ 47 n.4) and co-
20  conspirator Johnson Shao instructed customs broker George Wang to
21  falsely indicate that the pallets were not subject to the AD/CVD
22  duties, including for the pallets imported by Aluminum Shapes (Vol.
23  5, 8/16/21 Tr. at 43, 51-56, 70-71).  Exhibits admitted at trial,
24  including Exhibits 209, 210, and 213, show the Forms 7501 for the
25  pallets imported by Aluminum Shapes were filled out by Mr. Wang's
26  sister using the information provided by Johnson Shao and shell
27  companies controlled by defendant Liu.  (<u>See</u> Vol. 5, 8/16/21 Tr. at
28  45-47, 51-52.)  Defendants ask this Court to ignore the jury's

                                  10

1  verdict, but there is no basis to exclude the losses to CBP for

2  pallets fraudulently imported through Aluminum Shapes.

3      **B.    The MVRA Requires that Defendants Pay Restitution for Their**

4          **Wire Fraud Scheme Convictions**

5      The defendants argue that Probation erroneously regarded the

6  institutional investors as wire fraud victims, failed to marshal

7  sufficient evidence that the defendants caused a loss to the victim

8  investors, and erroneously calculated losses from the wire fraud

9  scheme.  Dkt. 343 (Warehouse Defendants' PSR Objections) at 18-25.

10  The Court should reject those arguments.

11      On July 30, 2015, a report that CZW referred to as the "DA

12  Report," and that the defendants call the "Dupre Report," was

13  published to investors.  The assertions in the Dupre Report mirrored

14  allegations in the indictment — which the jury found to be true —

15  including that CZW had inflated its revenue numbers by selling

16  aluminum to companies Liu beneficially owned and that the aluminum

17  was simply being stockpiled in California.  <u>See</u>, <u>e.g.</u>, Vol. 1,

18  8/10/21 Tr. at 197-98 (Perfectus sales executive, Bill Riley,

19  testifying that in July 2015, allegations began to emerge in the

20  investor community that CZW was selling aluminum to companies that

21  Liu owned and that that aluminum was being stockpiled in California

22  warehouses); Ex. 139 (CZW stating in an announcement that the

23  allegations were made on July 30, 2015); Ex. 142 (CZW publishing

24  announcement that recounted the Dupre Report allegations in detail).[5]

25  _____

26      [5] The scale of bogus revenue that CZW reported to its investors
    was immense.  For instance, in 2009 and 2010, CZW falsely reported to
27  its investors that it derived 40.8 and 29.1 percent of its revenue
    from arms-length customers in the US, respectively.  Ex. 131 at 27
28  (2010 CZW annual report). In 2013 and 2014, that number hovered
    *(footnote cont'd on next page)*

On July 31, 2015, the day after the Dupre Report was published, CZW suspended trading on its shares and did not lift the suspension until August 13, 2015.  Ex. 142 at 15 (CZW announcement providing that trading of CZW's shares had been suspended from July 31, 2015 to August 13, 2015).  When trading resumed, CZW's share price dropped by $.04, or 12.4 percent, erasing $289 million of CZW's shareholder equity.  See Ex. 8 at 9 (summary from government's securities expert, Dr. Torben Voetmann, reflecting decline in CZW share price during suspension period).

A report from the global credit agency Standard and Poor's ("the S&P report") shows that as of June 30, 2015 — or the end of the last full month before the Dupre Report was published — victim investors owned 43 percent of CZW's shares, while non-victim co-conspirators (predominantly defendant Liu) owned the remaining shares in the company.  Thus, the loss to the victim investors was 43 percent of the total loss to all shareholders, or $124,270,000 ("the victim loss").[6]

With that said, the S&P report shows only the number of shares that institutional investors, along with coconspirator investors (e.g., Liu), held in CZW.  The report shows that 28 institutional investors owned 139,203,328 shares in CZW as of June 30, 2015, and

around 11 percent.  Ex. 135 at 32 (CZW 2014 annual report). Between 2010 and 2014, CZW reported more than $2 billion in revenue from sales to the United States.  E.g., Ex. 32 (summarizing US revenue reported to investors).  To that end, CZW's bogus sales to the United represented a significant portion of the business it falsely reported to investors.

[6] This is a conservative loss calculation that takes in account only the decline in share price during the two-week suspension period.

therefore collectively suffered a loss of $5,568,133.[7]  See Sentencing Exhibit 1 (summarizing relevant portions of the S&P and Voetmann reports).  Based on records in its possession, the government cannot identify victim investors other than institutions (e.g., individual private investors).  At this time, the government requests that the defendants pay $5,568,133 in restitution to the institutional investors according to the amounts identified in Sentencing Exhibit 1.  Id.

Finally, the government briefly addresses two additional defense objections.  First, defendants argue that the institutional investors were not victims.  Dkt. 343 at 18-20.  This assertion is inconsistent with the S&P report, which shows that the 28 institutional investors were in fact the owners of the CZW shares that decreased in value during the suspension period.  See Sentencing Exhibit 1.

Second, the defendants argue that the Dupre Report was "not a valid corrective disclosure," and therefore cannot be considered the cause of the drop in CZW's stock price during the suspension period. Id. at 20-24.  The argument ignores the trial evidence and jury's verdicts.  The Dupre Report was published on July 30, 2015, and asserted that CZW was inflating its revenue numbers by selling aluminum to itself, an allegation that mirrored the indictment, and that the jury determined to be true through its across-the-board guilty verdicts on the wire fraud counts.  Following the revelation that CZW inflated its revenue numbers through the charged wire fraud scheme, and once CZW stock resumed trading, each share immediately lost $.04 and victim investors lost $124,270,000.

---

[7] This amount represents the number of shares the institutions held multiplied by $.04 (the loss per share).

1    Based on this sequence of events, the evidence introduced at

2    trial, the jury's guilty verdicts on the wire fraud counts, and

3    reasonable inferences, the Court should conclude that the unveiling

4    of CZW's revenue-inflation scheme caused the $.04 drop in share price

5    and the resulting $124,270,000 in loss to victim investors.  See

6    United States v. Hansen, 498 F. Supp. 3d 1332, 1336 (D. Idaho 2020)

7    ("district courts are granted a degree of flexibility in determining

8    victims' losses and are to 'engage in an expedient and reasonable

9    restitution process, with uncertainties resolved with a view toward

10   achieving fairness to the victim.'") (citing United States v. Gordon,

11   393 F.3d 1044, 1048-53 (9th Cir. 2004), abrogated on other grounds in

12   Lagos v. United States, 138 S. Ct. 1684 (2018)); United States v.

13   Sunchild, 637 F. App'x 316, 317 (9th Cir. 2016) ("As $19,735.77 was a

14   reasonable estimate based on evidence supported by sufficient indicia

15   of reliability, the district court did not err.") (quotations

16   omitted); United States v. Doe, 488 F.3d 1154, 1161 (9th Cir. 2007)

17   (upholding restitution amounts that were "supported by the record as

18   reasonable estimates of the loss"); United States v. Padilla, 2018 WL

19   4365494, at *1 (D. Idaho Sept. 13, 2018) ("the determination of the

20   restitution amount is by nature an inexact science, and . . . the

21   court may accept a reasonable estimate of the loss based on the

22   evidence presented.") (citations and quotations omitted); cf. United

23   States v. Zolp, 479 F.3d 715, 719 (9th Cir. 2007) ("The court need

24   not make its loss calculation with absolute precision, rather, it

25   need only make a reasonable estimate of the loss based on the

26   available information.").

27

28

1         **C.**    **The Court Should Order Restitution on a Joint Basis**

2       The PSR correctly recommends that restitution should be ordered

3 on a joint basis and that each defendant should be liable for the

4 entire amount. Under 18 U.S.C. § 3664(h), the Court may make each

5 defendant liable of the full amount of restitution or apportion

6 liability among the defendants. As noted above, however, in

7 requiring restitution for victims of property crimes with a pecuniary

8 loss, the MVRA defines victim to include "any person directly harmed

9 by defendant's criminal conduct in the course of the <u>scheme</u>,

10 <u>conspiracy</u>, or pattern." 18 U.S.C. § 3663A(a)(2) (emphasis added).

11 Defendants, including the Warehouse defendants, engaged in a criminal

12 conspiracy with objects including wire fraud and customs fraud.

13 Given their integral role in the fraudulent scheme and conspiracy and

14 resulting convictions, each of the Perfectus and Warehouse defendants

15 should be held liable for the full amount of restitution. <u>See</u> <u>also</u>

16 <u>Thomsen</u>, 830 F.3d at 1065 n.13 (9th Cir. 2016) (co-conspirators are

17 liable for restitution for a "victim's losses [that] were reasonably

18 foreseeable to that defendant."). The facts of the case (all six

19 defendants were controlled by defendant Liu and used to facilitate

20 the conspiracy), the MVRA, and case law regarding restitution all

21 strongly favor making the Warehouse defendants liable for the full

22 amount of restitution.[8]

23         **D.**    **Defendants Should be Ordered to Pay Restitution**

24               **Immediately**

25       Under 18 U.S.C. § 3572(d)(1), the presumption is that an order

26 for restitution should be paid immediately. As noted in the

27

28      [8] The Perfectus defendants do not argue that restitution should be assessed on a purse several liability basis.

                        15

1    government's sentencing position and objections to the PSR (Dkt.
2    348), the defendants have the financial resources – including $1.5
3    billion in assets plus four warehouses in Southern California – and
4    should be required to pay restitution immediately.  Further, as shown
5    at trial, defendant Liu controlled all six defendants and their
6    assets.  Thus, in consideration of the financial resources of the
7    defendants and joint control of the assets, the Court should order
8    immediate payment of restitution for all defendants.

9         As shown throughout the trial, the Warehouse defendants were
10   formed to facilitate defendant Liu's schemes: (1) to defraud
11   investors in China Zhongwang by housing aluminum "sold" by CZW to
12   Perfectus; and then (2) to defraud CBP out of $1.8 billion in AD/CVD
13   duties by storing millions of commercially useless aluminum pallets.
14   The government agrees with Probation that each defendant was operated
15   solely for a criminal purpose as supported by the evidence at trial,
16   and thus any fine issued should be ordered due immediately.  USSG
17   § 8C3.2(a) (immediate payment of fine required if defendant operated
18   primarily for a criminal purpose).

19        **E.    The Court May Alternatively Order Restitution Under 18**
20               **U.S.C. § 3663 or Should Order a Fine**

21        If the Court does not order the full amount of restitution
22   requested by the government under the MVRA, the Court should order
23   the any shortfalls in restitution under 18 U.S.C. § 3663.  Section
24   3663 permits the Court to order restitution to victims upon
25   consideration of the loss sustained for each victim and the financial
26   resources of the defendant.  Like the MVRA, Section 3663 also permits
27   restitution be ordered for "any person directly harmed by the
28   defendant's criminal conduct in the course of the scheme, conspiracy,

16

or pattern."  18 U.S.C. § 3663(a)(2).  For the reasons discussed above, the Court should exercise its authority to order restitution for the full amounts detailed below if it does not find it is mandated by the MVRA.

Further, the Court can issue a fine against the defendants under 18 U.S.C. § 3572(a)(8), and the fine may equal twice the gross gain or gross loss.  See 18 U.S.C. § 3571(d).  The factors under Section 3572 and 3553(a) favor the assessment of a large fine as the defendants have significant financial resources, the organizations failed to discipline any officer, director, employee or agent responsible for the offense, the offense conduct and loss amount were unquestionably very serious, and to deter future conduct.  Looking at the history and characteristics of the defendants, they were formed for a criminal purpose and failed to appear for over eight months and still have not paid any of the more than $5 million in total civil contempt sanctions.  The Warehouse defendants are delinquent on their property taxes and yet are renting out the warehouses.  See, e.g., Dkt. 336 (1001 Doubleday PSR) ¶¶ 75, 80.  These factors support a large fine in the event the Court declines to order restitution in the amounts requested.

**F.    Requested Sentence**

1.    Five Years' Probation

Under 18 U.S.C. § 3551(c), as organizations, the Perfectus and Warehouse defendants must be sentenced to probation, issued a fine, or both.  Given defendants' felony convictions, they are subject to a term of probation with a minimum of one year and maximum of five years.  18 U.S.C. § 3561.  Given the need to secure payment of restitution and to safeguard defendants' ability to make payments,

17

the Court should sentence both the Perfectus and Warehouse defendants to five years' probation.  See USSG § 8D1.1(a)(1)-(2).

### 2.   Special Assessment

Under 18 U.S.C. § 3013(a)(2)(B), each organizational defendant is required to pay a $400 special assessment for each felony count of conviction.  The two Perfectus defendants were each convicted of 24 felony counts, and the Court should require each of them to pay a $9,600 special assessment.  The four Warehouse defendants were each convicted of 17 felony counts, and the Court should require each of them to pay a $6,800 special assessment.

### 3.   Restitution

As discussed above, the Court should order restitution for each of the defendants due immediately in the amounts of:

- $1,836,244,745: CBP
- $5,568,133: Institutional Investors
- Total: **$1,841,812,878**

## III. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court reject defendants' objections to the PSR and impose the sentence and issue the restitution order requested by the government.