ROBERT F. RUYAK *(Pro Hac Vice)*
robertr@ruyakcherian.com
**RUYAKCHERIAN LLP**
1901 L Street NW, Suite 700
Washington, DC  20036
Telephone:  202-838-1560

Attorneys for Defendants
PERFECTUS ALUMINIUM INC.,
aka "Perfectus Aluminum Inc.," and
PERFECTUS ALUMINUM ACQUISITIONS LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 19-cr-00282 RGK |
| Plaintiff, | Judge:   R. Gary Klausner |
| vs. | |
| ZHONGTIAN LIU,<br>    aka "Liu Zhongtian,"<br>    aka "Chairman,"<br>    aka "Uncle Liu,"<br>    aka "UL,"<br>    aka "Big Boss,"<br>CHINA ZHONGWANG HOLDINGS<br>LIMITED,<br>    aka "ZW,"<br>    aka "Mother Ship,"<br>ZHAOHUA CHEN,<br>    aka "Chen Zhaohua,"<br>    aka "Uncle Chen,"<br>XIANG CHUN SHAO,<br>    aka "Johnson Shao,"<br>PERFECTUS ALUMINIUM, INC.,<br>    aka Perfectus Aluminum Inc.,"<br>PERFECTUS ALUMINUM<br>ACQUISITIONS, LLC,<br>SCUDERIA DEVELOPMENT, LLC,<br>1001 DOUBLEDAY, LLC,<br>VON KARMAN - MAIN STREET,<br>LLC, and<br>10681 PRODUCTION AVENUE, LLC, | **PERFECTUS DEFENDANTS'<br>SUPPLEMENTAL RESPONSE TO<br>THE GOVERNMENT'S<br>SENTENCING POSITION<br>AND OBJECTIONS TO THE<br>PRESENTENCE INVESTIGATION<br>REPORT**<br><br><br><br><br><br><br><br><br><br>Sentencing Date:       April 11, 2022<br>Time:    1:30 p.m. |
| Defendants. | |

1    Defendants Perfectus Aluminum, Inc. ("PAI"), and Perfectus Aluminum

2

3    Acquisitions, LLC ("PAA") (collectively, the "Perfectus Defendants"), through their

4    attorneys of record, RuyakCherian, LLP, hereby submit this Supplemental Response

5    to both the Government's Sentencing Position and Objections to the Presentence

6

7    Investigation Report (DKT 348) and the Government's Response to Defendants'

8    Objections to the Presentence Investigation Report ("PSR") and Updated Sentencing

9    Position (DKT 356).

10

11

12   Dated: April 1, 2022                    RUYAKCHERIAN, LLP

13

14

15   By: _____

16          Robert F. Ruyak

17   Attorneys for Defendants
     PERFECTUS ALUMINUM, INC and
18   `                                       PERFECTUS ALUMINUM
                                             ACQUISITIONS, LLC

19

20

21

22

23

24

25

26

27

28

I.   **INTRODUCTION**

Defendants Perfectus Aluminum, Inc ("PAI") and Perfectus Aluminum Acquisitions, LLC ("PAA"), (collectively, the "Perfectus Defendants" or "Defendants") file this supplemental response to address additional and changed positions recently taken by the government addressing the Presentence investigation report and Perfectus' objections to that report.

Despite the government's best efforts to avoid the clear requirements of the MVRA statute, shift its positions, and make new arguments, restitution is inapplicable and inappropriate in this case. The government has failed to satisfy the MVRA's requirements of identifying actual "victims" and actual "losses." Neither the government nor the purported "institutional investors" qualify as victims who sustained actual losses.  Unpaid AD/CVD are not losses to the CBP. The entities identified were never shareholders of CZW stock. The government's last-ditch position that the Court can impose a fine of $1.8 billion in lieu of restitution is contrary to fact and law and would be an unconstitutional excessive fine. Finally, the value of any aluminum pallets forfeited to the government must be counted as fines when determining whether additional fines should be imposed.

II.   **NOTWITHSTANDING THE GOVERNMENT'S RELIANCE ON "FRAUD AND DECEIT" CRIMES AS A BASIS FOR RESTITUTION, IT HAS FAILED TO SATISFY THE MVRA'S REQUIREMENTS OF IDENTIFYING ACTUAL "VICTIMS" AND ACTUAL "LOSSES"**

The government continues to contend that the MVRA applies in this case to warrant the imposition of restitution, which it does not[1]. In its latest filing (DKT

---

[1] The Perfectus Defendants objections to the application of the MVRA in this case is set forth more fully, with controlling authorities, in Perfectus Defendants' Sentencing Memorandum: Objections to Presentence Report; and Sentencing Summary Chart, filed with this Court on February 28, 2022. (DKT 346)

356), it contends that the MVRA applies to crimes of "fraud and deceit" as though that is enough to satisfy the statutory requirements for restitution. However, whether the crimes are against property or otherwise, the MVRA requires the identification of specific victims of the crime and the losses suffered by such victims.

The CBP is not a "victim," nor has it incurred "losses" as defined by the MVRA statute. (DKT 346 at 6-11) The failure to pay AD/CVD to the CBP at the time of entry of the products does not constitute "losses" to the government and the government is, therefore, not a victim.

Nor are any domestic company victims since "not a single pallet was sold in the US" according to the government and the Presentence Report. (DKT 333)

Nor are the entities listed in the Presentence Report (DKT 333 at 25) "individual victims," as the government contends. None of them has ever held beneficial ownership of CZW stock and, thus, has never experienced either gains or losses related to changes in the value of CZW stock. (DKT 346 at 12-15)

A.   <u>Unpaid AD/CVD Duties Are Not Losses to the Government or to Any Other Entity and, As Such, Cannot Be the Basis for Restitution.</u>

The policy purposes of the anti-dumping, countervailing duty statutes demonstrate that such "duties" are remedial and are not damages due to the CBP. Instead, they are a regulatory mechanism used to level the playing field of international competition.

> Dumping occurs when a foreign company ***sells a product in the United States for less than fair value***. *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1046 (Fed. Cir. 2012). Similarly, a foreign country may artificially lower a product's price through subsidies. *U.S. Steel Grp. v. United States*, 96 F.3d 1352, 1355 n.1 (Fed. Cir. 1996). To ameliorate distortions caused by these economic practices, Congress enacted the Tariff Act of 1930 ("Act"), which empowers Commerce to investigate potential dumping or subsidies, and if appropriate, issue orders imposing duties on the subject merchandise. *Sioux Honey Ass'n*, 672 F.3d at 1046-47. These antidumping and countervailing duty actions are intended to be remedial, not punitive in nature, *Chaparral Steel Co.*

*v. United States*, 901 F.2d 1097, 1103 (Fed. Cir. 1990), and it is Commerce's duty to determine margins as accurately as possible. *Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990).

*Goodluck India Ltd. v. United States*, 393 F. Supp. 3d 1352, 1356 (Ct. Int'l Trade 2019).

The "wrongdoer" for an import covered by anti-dumping tariffs is the government of the country from which the exporting business operates. That government provides subsidies to its domestic businesses, which the United States has determined to be improper and harmful to American businesses. In order to counteract the harm done by the foreign government, the US government imposes remedial tariffs and countervailing duties to benefit American companies. *See Torrington Co. v. United States*, 68 F.3d 1347, 1352 (Fed. Cir. 1995) ([A countervailing duty's] purpose is "prevent[ing] foreign manufacturers from injuring domestic industries by selling their products in the United States at less than 'fair value,' i.e., at prices below the prices the foreign manufacturers charge for the same products in their home markets."); *see also Agro Dutch Indus. Ltd. v. United States*, 508 F.3d 1024, 1027 (Fed. Cir. 2007) ("The purpose of the antidumping statute is to prevent foreign goods from being sold at unfairly low prices in the United States to the injury of existing or potential United States producers.").

But here, by the government's own admission and affirmative proof at trial, not one single pallet imported by Perfectus was "sold at unfairly low prices in the United States to the injury of existing or potential United States producers." *Id*. ***The government admits that there were no sales at all.*** Thus, there are no US producer "victims" within the MVRA definition.

Nor is the United States one. The purpose of the AD/CVD is not to put moneys in the US treasury, but to create a trade barrier against certain subsidized products – a purely remedial action intended to benefit private American industry.

PERFECTUS DEFENDANTS' SUPPLEMENTAL RESPONSE TO THE GOVERNMENT'S SENTENCING POSITION AND OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT

1    The duty is intended to "remedy" the market manipulation by dissuading the
2    importing of goods, rather than as an economic windfall to the government. Its
3    goal is to serves the policy purposes of keeping markets competitive. *Baoding*
4    *Mantong Fine Chemistry Co. v. United States*, 113 F. Supp. 3d 1332, 1336-37 (Ct.
5    Int'l Trade 2015).

6        Where, as here, the products (pallets) were never sold in the US market, the
7    failure to pay the AD/CVD duties did not result in any harm or loss. Nor were such
8    duties necessary to remedy any subsidization that occurred because, as admitted by
9    the government, they had no impact on the US market or US aluminum companies.
10   They were simply re-exported later.

11       Recent decisions recognize that the Department of Commerce sometimes
12   imposes excessive countervailing duties – especially in the case of products arriving
13   from Non-Market Economies ("NME's") such as China. *Baoding Mantong*, 113 F.
14   Supp. 3d at 1337-38 (emphasis added). These excessive duties outstrip the valid
15   "remedial" purpose in size and scope, and act instead as a fine aimed at simply
16   keeping the subject products from entering the country.

17       Here, Commerce did just that by assigning such a prohibitive AD/CVD equal
18   to 453.79% of the landed price as a remedial measure.[2]

19       In any event, these AD/CVD duties are simply not associated with any from
20   or measurement of actual loss. There is no legal authority to order restitution under

21

22   _____

     [2] To take a simplified example (one that does not require calculation of a weighted
23   average from multiple sales), a foreign exporter assigned a percentage dumping
24   margin of 453.79% on a pallet with a landed declared value of $200 would have paid
     an AD/CVD duty of approximately $900, making the total cost to the US importer
25   $1,100 -- an economically prohibitive number when such pallets sell in the United
     States market for $200 or less. Such AD/CVD are clearly intended to function as a
26   trade barrier to exclude any importation.

27

28

1  these circumstances; instead, the Court can only assess statutory fines and penalties
2  as part of the Perfectus Defendants' sentences.

3    **B.** **Government Admits That It Has Not Identified Any "Victims" of the**
4       **Alleged Drop in CZW Stock Values for Purposes of Restitution,**
5       **Either Under the MVRA or 18 USC Section 3663**

6       Both the MVRA and Section 3663 have the same requirement that
7  restitution may only be awarded to actual "victims" who have suffered losses. 18
8  U.S.C. Section 3663 is limited to "any person directly harmed by the defendant's
9  criminal conduct" 3663 (a)(2). But the government has yet to show any evidence
10 of even a single directly harmed shareholder. The government boldly states:

11         "***Based on records in its possession, the government cannot identify
           victim investors*** other than institutions *(e.g., individual private
12         investors)*. At this time, the government requests that the defendants
           pay $5,568,133.00 in restitution to the institutional investors
13         according to the amounts identified in Sentencing Exhibit 1." (Gov.
           response to Def's Objections. at p.15.)
14

15      The government has not contested the fact that the so called "institutional
16 investors" are merely fund managers who are not and never have been owners of
17 stock in CZW. Nor has it offered any probative evidence, let alone a
18 preponderance of evidence, showing that these entities were financially harmed in
19 any way by the changes in prices of CZW stock.[3]

20      Absent evidence regarding the entities to which they wish this court to
21 provide restitution actually owned CZW stock (i.e., prove the identities of any
22 actual "victims"), the government has failed on its burden of proof.  The restitution
23 they seek cannot, as a matter of law, be part of the sentences in this case.

24

25 _____
   [3] The government at least admits that the outrageously overstated restitution in the
26 amount of over $124 million that they sought the court impose was totally wrong
   and have now reduced that number to approximately $5.6 million – an initial
27 overstatement of over 2,200%.
28

1    Moreover, these entities cannot be used as proxies for unnamed and

2   unidentified victims, as the government seems to suggest, because the

3   identification of the actual victims "is a statutory prerequisite to the application of

4   the MVRA." *United States v. Catoggio*, 326 F.3d 323, 328 (2nd Cir. 2003).

5        C.    <u>The Government's Last-Ditch Position That the Court Can Impose a</u>

6              <u>Fine of $1.8 Billion in Lieu of Restitution Is Contrary to Facts and</u>

7              <u>Law</u>

8        Having utterly failed to show that restitution is appropriate in this case, the

9   government, before giving up, argues, without factual or legal support, that this

10  Court could alternatively impose fines against the Defendants in the exact same

11  amount as their purported "restitution" number -- $1.8 billion.  However, this last-

12  ditch effort to obtain massive amounts of money to which the government is not

13  entitled, suffers from the exact same fatal flaws as their request for restitution.  18

14  USC section 3571(d) provides that fines may be imposed in amounts up to twice the

15  "gains or losses."  However, the government has not established the existence of

16  such "gains or losses" in this case to support such alternative fines.

17       Certainly, there is no evidence of any "gains" to any defendant in this case.

18  Once again, the government has taken the absolute position that "not a single pallet

19  was sold in the U.S."  Thus, there could not have been gains to Perfectus – no sales

20  equals no gains.  For the very same reasons – no sales in the US – there is no

21  evidence of "losses" to any other entity.  For the reasons set forth above, the

22  unpaid AD/CVD duties are not losses to the government.  And because no pallets

23  were sold in the US, no US companies offering competing products suffered any

24  sales losses or reductions in prices.  Simply put, the government's poorly thought-

25  out suggestion that "fines" can be a proxy for "restitution" is simply wrong.

26       Finally, the government concludes by simply arguing that the facts of this

27  case warrant a "large fine."  However, they make no effort to address the issue of

28

6

PERFECTUS DEFENDANTS' SUPPLEMENTAL RESPONSE TO THE GOVERNMENT'S SENTENCING
POSITION AND OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT

statutory maximum fines which inherently control the sizes of the fines that may be constitutionally imposed in this case.

### III. ANY FORFEITED PALLETS (OR PROPERTY) SHOULD BE COUNTED AS FINES AGAINST DEFENDANTS WHICH IS SUBJECT TO THE EXCESSIVE FINES SCRUTINY BY THE COURT

Government also takes the position that the Pallets are not available for satisfying any restitution or fines imposed at sentencing because they have been seized by the government. This allegation is meritless and contradicts Supreme Court precedent. "Forfeitures – payment in kind – are 'fines' if they constitute punishment for an offense." *United State v. Bajakajian*, 524 U.S. 321, 328 (2010). As explained below, forfeiture of the Pallets as part of the sentence in this case constitutes punishment and, as such, triggered the excessive fines inquiry. Combined with the alleged fine the government is seeking, the total "fines" would be "extraordinarily harsh" and constitutes a violation of the Excessive Fines Clause.

The Supreme Court has held that the Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" *Austin v. United States*, 509 U.S. 602, 609-610 (1993) (emphasis deleted). Forfeiture of property under section 982(a)(1) has historically been part of "in *personam*, criminal forfeitures." *Bajakajian* at 332. As such, criminal forfeiture under this section is wholly punitive and "serves no remedial purpose." *Id.* "The type of property at issue was irrelevant, … instead, the Court consistently focused on whether the forfeiture stemmed, at least in part, from the property owner's criminal culpability. If so, the forfeiture does constitute punishment." *United States v. Jalaram*, 599 F.3d 347, 354 (4th Cir. 2010); *see also United States v. $ 293,31 in United States Currency*, 349 F. Supp. 2d 638, 642

1   (E.D.N.Y. 2004). Forfeitures under section 982 are actually "fines" and subject to
2   proportionality review under the Excessive Fines Clause. *Bajakajian* at 332.

3        "[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly
4   disproportional to the gravity of a defendant's offense." *Id.* at 334. "In determining
5   whether the forfeiture was grossly disproportionate … the court compared the
6   maximum statutory fine" with the value of the forfeitures. *United States v. Wallace*,
7   389 F.3d 483, 484 (5th Cir. 2004); *see also United States v. Beecroft*, 825 F.3d 991,
8   1001 (9th Cir. 2016) ("[T]his is a tremendous disconnect between the forfeiture
9   amount and Beecroft's legally available fine."). A forfeiture judgment greater than
10  the statutory maximum fine is not presumptively invalid but should receive close
11  scrutiny rather than a presumption of constitutionality. *See United States v. Carlyle*,
12  776 Fed. Appx. 565, 572 (11th Cir. 2019) (citing *United States v. Sperrazza*, 804
13  F.3d 1113, 1127 (11th Cir. 2015). Courts in this Circuit have repeatedly rejected
14  forfeiture orders when the value of forfeiture is much greater than the maximum
15  statutory fine. *See e.g., United States v. $100,348.00 in U.S. Currency*, 354 F.3d
16  1110, 1123 (9th Cir. 2004) (holding that a forfeiture amount between 3 and 20 times
17  greater than the maximum fine would be unconstitutionally excessive); *United States
18  v. 3814 NW Thurman St.*, 164 F.3d 1191, 1198 (9th Cir. 1999) (rejecting forfeiture
19  amount "more than 40 times the maximum fine permitted under the Guidelines").

20       The maximum statutory fine in this case for all convicted counts is
21  $28,959,975. (DKT 355 at 11).  Relying on the Presentence Report, the Pallets are
22  presumptively valued at around $60,142,000.  Were the Court to find that § 8C1.1
23  applies, any statutory fine, together with the forfeited Pallets, would be subject to
24  the Excessive Fines scrutiny by the Court. Thus, a fine imposed in the amount of
25  $28,959,975 (maximum fines allowed by statute), combined with the forfeited
26  Pallets, would amount to a fine that is more than three times the maximum statutory
27
28

amount, which would be unconstitutionally excessive under the Eighth Amendment. Accordingly, the government's untenable and baseless proposal must be rejected.

## IV.    **CONCLUSION**

For the foregoing reasons, the Court should sentence the Perfectus Defendants to terms of probation that do not include restitution. If, however, the Court is inclined to consider ordering restitution be paid as a condition of probation, the Perfectus Defendants respectfully request that an evidentiary hearing be held to determine the total amount of restitution owed, the apportionment of the restitution obligation among the defendants, and the appropriate payment schedule for each defendant.

Moreover, if the Court is inclined to order any fines in this case, the Perfectus Defendants respectfully request that they be set in a manner consistent with §8C1.1 as not in excess of the Perfectus Defendants' net assets, and in conformance with the Guidelines, in a calculated amount not to exceed the statutory maximum of $28,959,975.


Dated: April 1, 2022                    RUYAKCHERIAN LLP


                                        By: _____

                                        Robert F. Ruyak

                                        Attorneys for Defendants
                                        PERFECTUS ALUMINIUM INC.,
                                        Aka "PERFECTUS ALUMINUM, INC."
                                        and PERFECTUS ALUMINUM
                                        ACQUISITIONS LLC